OPINION

Montey Allan MAYS, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–74–271.

Court of Criminal Appeals of Oklahoma.

June 28, 1974.

Dennis Butler, Lawton, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., for appellee.

BLISS, Presiding Judge:

The appellant, Montey Allan Mays, hereinafter referred to as defendant, was charged, tried before a jury, and convicted in the District Court of Comanche County, Oklahoma, Case No. CRF–73–299, of the crime of Child Beating. Punishment was assessed at a term of three (3) years imprisonment in the state penitentiary, and from said judgment and sentence the defendant has perfected his timely appeal.

The State's first witness was Danny L. Osborn who lived approximately one hundred feet from the defendant on the 24th day of May, 1973. After arriving home from work between 5:30 p. m. to 6:30 p. m. he heard a baby crying in an abnormal manner and could hear the defendant hollering "shut up." Shortly he heard it all start over again and informed the police and juvenile authorities. On cross-examination he related that he had heard the baby crying "real loud" once before but all other times the cry was normal. .

Ronald Kent Ward then testified that he was a juvenile officer with the Lawton Police Department and that on the day in question he investigated Osborn's complaint and proceeded to the defendant's house. Upon arriving, he related that the following transpired:

"* * * We went up the stairs and knocked on the door, and Mr. Mays came to the door. I asked him if he had a small child, and he said, 'yes,' and I asked him if he had been punishing it within the last few minutes, and he said, 'yes,' and he began to shake visibly. It appeared that he became extremely nervous. He said that he had punished the child because they were trying to potty train it, and it had wet in the floor, and I explained to him that one of the neighbors had called, and that they thought that they could hear the belt hitting the child from a distance of about a hundred feet, and we would like to look at the child if it would be all right. He said it would be all right, and let us into the house, and said that the child was still

on the potty, and directed me to a bedroom which was in the southeast portion of the house. We went back to the bedroom and looked at the child, and it was readily apparent to me that the child had been abused. He had—his legs and his back were highly discolored; his face was marked, his lip was bleeding, and at that point I told Mr. and Mrs. Mays that they were under arrest for child beating, and I advised both of them of their rights according to the Mrianda warning."

He further described the injuries of the child as follows:

"Well, his buttocks area and his lower thigh area on the back portion of his legs were highly discolored; they were very black and bruised. The child had a bruise under his right eye, and also had a small blood spot on his right eye. His lips were bleeding at the time. He had marks on his back, as well, and he had what appeared to be some type of a scrape or cut on the front portion of his stomach in this general area."

and stated that the child was about sixteen (16) months old.

On cross-examination the witness testified that he arrived at the scene at approximately 6:45 p. m. and he asked both the defendant and his wife how the child had been marked. He did not recall Mrs. Mays offering any explanation. The defendant related that he had used a ping pong type paddle of the type which comes with a rubber ball attached by a rubber band and gave the paddle to the witness. On redirect examination Officer Ward testified that the paddle had what appeared to be blood spots on it and it had a broken handle.

Robert Morales then testified that he was a police cadet for the Lawton Police Department and had accompanied Officer Ward on the day in question. His testimony was substantially the same as Officer Ward's.

Dr. Melton P. Meek, a pediatrician, then testified that on the 25th day of May, 1973, at approximately 2:30 p. m., he examined the child in question. Prior to his examination, he had x-rays taken of the child which proved to be completely normal for the entire body. He observed extensive bruising, a slight laceration of the right lower lip, a very mild bruise on the right forehead, and multiple minor bruising over the entire back. The child was purple from the waist down to the middle of the legs in the back and was markedly bruised. He related that he graded bruising on a four plus scale explaining that if the bruise is minor it is a one plus and if extremely severe a four plus. He stated that he graded these bruises at approximately three to four plus in degree. He also observed a linear bruise, which was purple, of the right scrotum and a red bruise on the right thigh in front near the groin. From his examination, he estimated that the bruises were anywhere from twelve to thirty-six hours old. He stated that in his opinion this child had been beaten. On cross-examination the witness testified that the only excessive bruises were from his buttocks to the middle of his thighs. The State then rested.

The defendant, testifying in his own behalf, stated that he was twenty-three (23) years old, that he was presently in the Army and had been in for approximately six years and that his wife already had the child at the time of their marriage. Prior to the officers' arrival he was potty training the child and spanked the child because he was having problems training him. He state that he spanked him harder than he should have and estimated the spanking took place not over thirty seconds to a minute. At the time he spanked the child he did not have any intention to harm the child and was not aware that the child was bruised that much. He further stated that the paddle was already broken and gave testimony in reference to his extensive combat experience in Vietnam and his resulting nervousness.

The defense next called Ellis Mays, the defendant's father, who testified that his son had not been around babies until his marriage and that when the defendant came back from Vietnam he was nervous

and high strung and the least noise bothered him. He also testified that to his observation the defendant had a good attitude toward the child in question.

The defendant's next witness was Mary Mays who testified that she was the mother of the defendant. Her testimony was substantially the same as her husband's.

The defendant's next witness was Alexandra Mays who testified that she was married to the defendant on the day in question and was presently married to him, that she had the child in question prior to their marriage and that she and the defendant had been married approximately four to five months previous to the incident. She stated that the defendant cared and loved the child in question and had spanked the child before with his hand but never did hurt him. She related that the bruises on the forehead of the child were caused by the child falling down on the sidewalk two or three days previous to the incident. She was present at the time of the spanking and had no idea that her husband was hurting the baby or bruising him that bad. She further related that the child had never been bruised that much before. She further stated that her husband had never mistreated or abused a second child which had been born subsequent to the incident.

On cross-examination she admitted that she had stopped the defendant from whipping the child in question previously. Upon inquiry as to the details, she testified that the defendant had taken the child into the bedroom and had backhanded him. At that time she grabbed a chair and hit the defendant and he turned around real nervous and sat down.

■ The only matters raised for consideration on appeal concern the sufficiency of the evidence and the modification of the sentence. In the instant case it is clear that the State proved a prima facie case of child beating. There was competent evidence from which the jury could reasonably conclude that the defendant was guilty as charged. This Court, therefore, will not disturb the verdict. See Shabarekh v. State, Okl.Cr., 484 P.2d 898, Stumblingbear v. State, Okl.Cr., 364 P.2d 1115 and Hudson v. State, Okl.Cr., 399 P.2d 296.

■ The punishment imposed was within the range allowed by statute. Title 21 O.S.1971, § 843. The record in the instant case reflects that it is free of errors justifying modification and there is no indication that the verdict was returned due to passion, bias or prejudice of the jury.

As neither reversal nor modification is required, the judgment and sentence must be affirmed. However, in light of the facts presented at the trial with reference to the defendant's combat experiences which resulted in his nervous condition we call the trial court's attention to 22 O.S. 1971, § 994 concerning the trial court's jurisdiction to suspend a judgment and sentence, as otherwise provided by law, after a conviction is affirmed by this Court.

BRETT and BUSSEY, JJ., concur.