**STATE of Iowa, Appellee,**

v.

**Paul Charles ARNOLD, Appellant.**

**No. 95–250.**

Supreme Court of Iowa.

Feb. 14, 1996.

Linda Del Gallo, State Appellate Defender, and Sarah E. Hennesy, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Sheryl A. Soich, Assistant Attorney General, Lee W. Beine, County Attorney, and Sterling L. Benz, Assistant County Attorney, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LAVORATO, NEUMAN, and ANDREASEN, JJ.

HARRIS, Justice.

Although defendant insists otherwise, we find ample evidence to support his conviction of child endangerment. We affirm.

At the time in question defendant Paul Arnold was home from work, in bed with back pain. He overheard his wife, Tammy Arnold, attempt to discipline her nine-year-old stepdaughter (defendant's daughter) by using what was described as "the bouncing method" (requiring R.A. to bounce up and down, just high enough to get her feet off the floor, for a period of ten minutes). Because R.A. would not "bounce" properly and "talked back," Tammy swatted her with a small cutting board.

R.A. struggled against the punishment by pulling at her hair and eyebrows and biting her tongue. She called out for her father in the hope of escaping discipline. When defendant emerged from the bedroom, R.A. yelled and shook her fist at him. This commotion caused defendant to lose his temper, and he forced R.A. to bend over the arm of the living room couch and spanked her a number of times with a leather belt. The belt had no buckle or latch attached to it.

Three days later R.A. told a family therapist about the spanking and displayed her bruised buttocks. The therapist reported her observations to the department of human services. An investigation for child abuse ensued, and at trial a child abuse investigator provided a grim description of R.A.'s injuries:

> On [R.A.'s] left buttock, she had approximately a four-inch-long bruise that was about an inch-and-a-half wide. It was reddish blue in color, and appeared to me to be one to five days old. Below that, she had a bruise that was linear and approximately two-and-one-half inches long and about a half-an-inch wide. It was also the same color, and appeared to be the same age.

On her right buttock, she had a three-inch-long linear bruise that was about a half-inch wide. Below that, she had a two-inch-long bruise that was about a half-an-inch wide, and then below that, with about an inch-and-a-half spacing, there was another two-inch-long bruise that was about a half-an-inch wide. Those were all the same color and appeared to be the same age and appeared to have been caused in the same manner.

On her upper right thigh she had a bruise that was about an inch-and-a-half wide and it was irregular in shape, mostly linear. It also was the same color, appeared to be the same age, and appeared to have been caused in the same manner.

Photographic exhibits clearly support the accuracy of these observations.

The State charged defendant with child endangerment in violation of Iowa Code sections 726.6(1) and 726.6(3) (1993). The trial court's jury instruction required the State to prove the following:

1. On or about the 24th day of April, 1994, the defendant was the parent, guardian, or person having custody or control of [R.A.].

2. [R.A.] was under the age of fourteen years.

3. The defendant

 a. knowingly acted in a manner creating a substantial risk to [R.A.'s] physical, mental or emotional health or safety, or

 b. Intentionally used unreasonable force, torture or cruelty that resulted in physical injury to [R.A.].

After defendant's motion for a judgment of acquittal was denied the case was sent to the jury, which returned a guilty verdict.

Defense counsel thereafter moved for a new trial. The trial court denied the motion, entered judgment, and sentenced Arnold to 180 days in jail at hard labor, with all but two days suspended. Arnold appeals from this judgment.

I. Defendant raises three issues on appeal. In the first he contends the district court erred in denying his motion for judgment of acquittal because the evidence adduced at trial was insufficient to support a criminal conviction. In framing the claim, defendant asserts the State failed to meet its burden of proof by demonstrating he "intentionally used unreasonable force, torture or cruelty" in spanking R.A. or that he "knowingly acted in a manner creating a substantial risk to [R.A.'s] physical, mental or emotional health or safety."[1] Our review is for correction of errors at law. Iowa R.App.P. 4.

The scope of our review on a defendant's appeal from a criminal conviction is narrow. *State v. Clarke*, 475 N.W.2d 193, 197 (Iowa 1991). In reviewing the finding of guilt, we view the evidence in a light most favorable to the State. *Id.* We are bound by the jury's verdict of guilty unless there is no substantial evidence in the record to support it or such a finding is clearly against the weight of the evidence. *Id.* Substantial evidence means evidence which could convince a rational trier of fact that the defendant is guilty of the crime charged beyond a reasonable doubt. *Id.* We examine the entire record and accept all legitimate inferences permitted by the evidence to support the verdict. *Id.*

Defendant can be convicted under either prong of the two-pronged indictment. We first examine whether sufficient evidence existed to support a finding that defendant "intentionally used unreasonable force, torture or cruelty" when spanking R.A.

II. Whatever changes may have occurred in social views on corporal punishment, Iowa law has remained consistent. The government can intrude only so far into family judgments on such matters. The law regarding a parent's right to discipline his or her child may be succinctly summarized in the following manner:

A parent, being charged with the training and education of his [or her] child, has the

---

1. The other elements of child endangerment are (1) that Paul was R.A.'s parent, guardian or person having custody or control of her, and (2) that R.A. was under the age of fourteen. *See* Iowa Code § 726.6(1). Defendant does not challenge the sufficiency of evidence regarding these elements, so we confine our discussion accordingly.

right to adopt such disciplinary measures for the child as will enable him [or her] to discharge his [or her] parental duty. Accordingly, [the parent] has the right to correct the child by reasonable and timely punishment, including corporal punishment.... The control and proper discipline of a child by the parent may justify acts which would otherwise constitute assault and battery, but the right of parental discipline clearly has its limits. And if the limits are exceeded, the parent may be criminally liable for assault or other offenses, [or] violation of penal statutes....

59 Am.Jur.2d *Parent and Child* § 22 (1987). Iowa is in accord. It recognizes parents have a right to inflict corporal punishment on their child, but that right is restricted by moderation and reasonableness. *State v. Bell*, 223 N.W.2d 181, 184 (Iowa 1974). When the parent goes beyond the line of reasonable correction, his or her conduct becomes criminal. *State v. Bitman*, 13 Iowa 485, 486 (1862). "Corrective" means it must be for the purpose of behavior modification rather than to satisfy the passions of the enraged parent. *State v. Fischer*, 245 Iowa 170, 178, 60 N.W.2d 105, 110 (1953). The proper test is whether, under the particular circumstances, the amount of force used or the means employed by the parent rendered such punishment abusive rather than corrective in character. *See Fischer*, 245 Iowa at 177, 60 N.W.2d at 109. No precise rule defining what is permissible can be laid down because the amount of force which would be reasonable or excessive necessarily varies with the age, physical condition, and other characteristics of a child as well as with the gravity of the child's misconduct. 59 Am. Jur.2d *Parent and Child* § 22 (1987).

III. The record here contains ample evidence to support the jury's verdict of guilty. Arnold admits to losing his temper and striking R.A. with a belt, although he maintains he gave her no more than three swats. When he told this to the child abuse investigator, she replied, "[T]here is no way that three swats could have left [those] injuries." In cases similar to R.A.'s, the investigator testified injured children have generally been struck more times than their bruises would indicate because of the difficulty of bruising

the fatty tissue in the buttocks area. The investigator also indicated the severity of R.A.'s injuries by stating: "[In] the majority of the physical abuse cases that we investigate, children have red marks after being struck, but those red marks disappear anywhere from shortly after the incident to within twenty-four hours." Here however R.A.'s bruises were clearly visible three days after the incident. The investigator concluded "rarely do you see bruising to the magnitude that R.A. had on her buttocks."

Other witnesses also testified concerning the severity of R.A.'s injuries. A family therapist stated she would classify the incident as "abuse," and noted she would not use the word "spanking" but possibly the word "beating" instead to describe the cause of R.A.'s injuries. A social worker also thought the bruises were "the result of excessive force," and use of the force required to inflict these types of injuries would be "unreasonable."

Defendant responds with two arguments. He first contends spanking a child does not constitute child endangerment, and it is not the type of conduct for which the State may intercede. We however think the jury could find the line where discipline becomes abuse clearly has been crossed under the facts here. *Bitman*, 13 Iowa at 486; *see also People v. Curtiss*, 116 Cal.App.Supp. 771, 300 P. 801 (1931) (holding evidence defendant, a teacher and principal of a school, punished a seven-year-old boy for engaging in an altercation with another pupil by whipping him with a wooden paddle approximately thirty times, resulting in bruises and welts on his buttocks and upper leg, was sufficient to warrant a conviction); *State v. Palozie*, 165 Conn. 288, 334 A.2d 468, 472 (1973) (strapping to a degree that bruises and some scabbing covered a three-inch area of the child's buttocks was sufficient to warrant defendant's conviction, under a penal statute, of the crime of risk of injury to a child); *Townsend v. State*, 616 N.E.2d 47, 50 (Ind.App. 1993) (finding that bruises on a child's thigh from a belt could certainly cause the jury to conclude that the punishment was cruel and excessive and did not constitute reasonable parental discipline), *rev'd on other grounds*,

632 N.E.2d 727, 730–31 (Ind.1994); *People v. Leonard,* 81 Mich.App. 86, 264 N.W.2d 130, 131 (1978) (finding medical and photographic evidence, showing that the spanking which the defendant administered to a three-year-old child for whom he was baby-sitting was more like a beating, was clearly sufficient to sustain the defendant's conviction of cruelty to children); *State v. Henggeler,* 312 Mo. 15, 278 S.W. 743, 746 (1925) (holding evidence that the defendant had beat a twelve-year-old child in his custody with a strap, inflicting wounds and injuries on her person and causing her skin to be lacerated, bruised, and broken, sufficient to constitute unlawful assault of an infant in his custody); *Mays v. State,* 524 P.2d 55, 57 (Okla.Cr.1974) (prima facie case of child beating against the defendant found when examination revealed excessive bruises on the back, buttocks, and back of the legs of the defendant's wife's sixteen-month-old child, and the defendant admitted he had spanked the child with a table tennis paddle); *but see Arkansas Dep't of Human Serv. v. Caldwell,* 39 Ark.App. 14, 832 S.W.2d 510 (1992); *Deloso v. State,* 37 Md.App. 101, 376 A.2d 873 (1977); *In Interest of A.R.,* 579 So.2d 1269 (Miss.1991); *In re Ethan H.,* 135 N.H. 681, 609 A.2d 1222 (1992). Defendant's first contention is thus without merit.

Defendant's second contention stresses that "a child surely should not be rewarded for disobedience such as" R.A. exhibited. He argues he had the right to adopt such disciplinary measures for R.A. as would enable him to discharge his parental duty. While conceding that some may view his choice of discipline in this case as an "error in parental judgment," defendant argues a mere error in judgment does not, *as a matter of law,* deem the discipline unreasonable.

This contention proceeds from a faulty legal premise. American courts are not in full agreement on how to define the limits of the parental right to discipline a disobedient child. There are two schools of thought. Some courts take the view that a parent acts in a judicial or quasi-judicial capacity when punishing a child. 59 Am.Jur.2d *Parent and Child* § 22 (1987). When acting in this capacity, a parent is not criminally liable for either an error in judgment or because the fact finder thinks the punishment was disproportionate to the misconduct. *Id.* They may be held criminally liable only if the punishment resulted in permanent injury or death. *Id.* A majority of the courts, however, recognize the rule that a parent may only inflict such punishment as is reasonable under the facts and circumstances. *Id.* As this is our rule, we also reject defendant's second contention.[2]

There was evidence from which the jury could find R.A. was willfully disobedient and in need of discipline, but there was also evidence that defendant's discipline by striking her with a leather belt in such a manner was unduly severe and harsh. Under these circumstances, the reasonableness or excessiveness of the punishment was a question for the jury. *See Fischer,* 245 Iowa at 178, 60 N.W.2d at 110.

■ IV. Defendant urges two additional assignments addressing separate occurrences during jury deliberations. One juror disclosed to the other jurors she had asked her mother, who worked in social services, if social workers or police officers had a legal duty to seize the weapon which allegedly caused the child's injury, and her mother said there was no such duty. The second incident occurred when another juror looked

---

2. Defendant also argues that, under the second prong of the indictment, the evidence did not establish that he "knowingly acted in a manner creating a substantial risk to [R.A.'s] physical, mental or emotional health or safety." In support of this contention defendant notes that R.A. testified the spanking only hurt for one day, the child abuse investigator testified the injuries did not require medical attention, and the family therapist returned R.A. home after learning of the bruises because she knew R.A. was not in any danger. In response the child abuse investigator

testified concerning the long-term effects of physical abuse on children. The State argues this testimony could allow the jury to draw the inference that defendant's spanking of R.A. caused a substantial risk to her emotional well-being. Although defendant's arguments are stronger under the second prong of the charge, there was substantial evidence to support a conviction under the first prong. Accordingly we need not consider whether defendant could prevail in his arguments addressed to the second prong.

up the word "risk" in the dictionary and shared the definition with the other jurors.

 It is true that "trials are to be decided on facts produced in court under rules of evidence and subject to cross-examination." *State v. Folck,* 325 N.W.2d 368, 372 (Iowa 1982). It is however well settled that to impeach a verdict on the basis of jury misconduct, three conditions must be met: (1) evidence from the jurors must consist only of objective facts concerning what actually occurred in or out of the jury room bearing on misconduct; (2) the acts or statements complained of must exceed tolerable bounds of jury deliberations; and (3) it must appear the misconduct was calculated to, and with reasonable probability did, influence the verdict. *State v. Cullen,* 357 N.W.2d 24, 27 (Iowa 1984) (deriving this test from prior cases); *see also Ryan v. Arneson,* 422 N.W.2d 491, 495 (Iowa 1988) (clarifying the first prong through an interpretation of Iowa rule of evidence 606(b) by excluding any evidence of the internal deliberations of the jury but allowing statements containing extraneous prejudicial information or outside influence that was brought to bear on the jury). Both of defendant's complaints of jury misconduct fail under the third prong of this "test." It clearly does not appear that the incidents, either separately or considered together, "probably" influenced the verdict.

Because we find no merit in any of defendant's assignments, the judgment of the trial court must be and is affirmed.

**AFFIRMED.**