# IN THE COURT OF APPEALS OF IOWA

No. 17-0650
Filed February 7, 2018

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**OWEN F. BENSON,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Woodbury County, Jeffrey L. Poulson, Judge.


        Owen Benson appeals from his convictions for assault causing bodily injury and child endangerment.  **AFFIRMED.**



        Priscilla E. Forsyth, Sioux City, for appellant.

        Thomas J. Miller, Attorney General, and Kevin Cmelik, Assistant Attorney General, for appellee.



        Considered by Danilson, C.J., and Doyle and Mullins, JJ.

**DANILSON, Chief Judge.**

Owen Benson appeals from his convictions for assault causing bodily injury and child endangerment, challenging the sufficiency of the evidence his conduct was not legal corporal punishment and the jury instructions given. Finding substantial evidence to support the conviction and no error in the instructions given, we affirm.

Owen Benson used the two-foot-long handle of a child's broom and struck his fiancée's eight-year-old child's legs with such force that it left bruises, which were visible for several days. After a jury trial, Benson was found guilty of assault causing bodily injury and child endangerment.[1] On appeal, Benson challenges the sufficiency of the evidence to sustain his convictions, claiming his conduct did not constitute an act intended to cause pain or injury or to result in offensive physical contact and was not done with knowledge that he was creating a substantial risk to the child's health or safety, but rather was "legal corporal

---

[1] The jury was instructed that to find Benson guilty of assault causing bodily injury, the State had to prove the following beyond a reasonable doubt:
> 1. On or about the 6th day of March, 2016, Owen Benson did an act which was intended to cause pain or injury to [the child] or which was intended to result in physical contact which was insulting or offensive to [the child].
> 2. Owen Benson had the apparent ability to do the act.
> 3. Owen Benson's act caused bodily injury to [the child] as defined in Instruction No. 19.

And to find Benson guilty of child endangerment, the State had to prove the following:
> 1. On or about the 6th day of March, 2016, Owen Benson was a person having custody or control of [the child].
> 2. [The child] was under the age of fourteen years.
> 3. Owen Benson acted with knowledge that he was creating a substantial risk to [the child's] physical, mental, or emotional health or safety.

punishment as allowed by Iowa law." He also contends the trial court erred in instructing the jury concerning the requisite intent for the offenses.

We review challenges to the sufficiency of the evidence for errors at law. *State v. Serrato*, 787 N.W.2d 462, 465 (Iowa 2010). "A guilty verdict must be supported by substantial evidence." *Id.* We consider all the evidence, and "'[s]ubstantial evidence' is that upon which a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *Id.* (citation omitted).

In Iowa, a parent is allowed to use corporal punishment on their child, "but that right is restricted by moderation and reasonableness." *State v. Arnold*, 543 N.W.2d 600, 603 (Iowa 1996). If a parent's conduct exceeds the restrictions of moderation and reasonableness, the conduct "becomes criminal." *Id.* "The proper test is whether, under the particular circumstances, the amount of force used or the means employed by the parent rendered such punishment abusive rather than corrective in character." *Id.* Whether physical punishment constitutes unreasonable force depends upon the "age, physical condition, and other characteristics of a child as well as with the gravity of the child's misconduct." *Id.*

In *Arnold*, a parent was convicted of child endangerment as a result of forcing his nine-year-old daughter to bend over the arm of a couch and spanking her several times with a leather belt. *Id.* at 601. The child told her therapist about the punishment three days later and displayed her bruised buttocks. *Id.* At trial, a child abuse investigator testified, describing the child's injuries. *Id.* at 601-02. The supreme court upheld the parent's conviction, concluding the jury could determine the "defendant's discipline by striking [the child] with a leather belt in such a manner was unduly severe and harsh." *Id.* at 604; *see also State v.*

*Thompson*, No. 16-0443, 2017 WL 1733146, at *2 (Iowa Ct. App. May 3, 2017) (upholding conviction for child endangerment resulting in bodily injury where parent asserted reasonable corporal punishment, noting the jury was entitled to believe the victim's testimony over the defendant's and conclude the force used was unreasonable).

Here, the evidence shows that in March 2016 Benson lived with his fiancée, Janet Wiener, and Janet's youngest child, S.W. Janet's oldest three children—B.B., age eleven; G.B., age ten; and Z.B., age eight—were also in the residence Wednesdays after school until 6:00 p.m. and every Sunday. On March 6, 2016, the three oldest children were attending a birthday party next door, and S.W. wandered away from home while Wiener thought S.W. was napping. Wiener learned S.W. had been located by law enforcement officers, and she went to pick up the child. Benson was left in charge of the three oldest children.

When B.B., G.B., and Z.B. returned home from the birthday party, Benson told them to go to their rooms and wait there until their father picked them up. The three children got their backpacks ready, put on their shoes and socks in preparation for their father's arrival, and went outside to wait for him. Benson emerged from the house carrying the handle of a child's broom (at trial, B.B. called it Benson's "whacking stick") and yelled at the three children, who had left the front porch. Benson hit B.B. twice on the buttocks with the broom handle, hit G.B. twice on the buttocks, and then hit Z.B. on the back of his legs. The children cried when Benson hit them, and they told their mother about it when she returned home.

At trial, Benson asserted he had caught the children defacing their dressers. He told them to go to the porch and they were going to get spanked. Instead of staying on the porch, the children ran off to a neighbor's house. After returning to the porch, all three children were spanked by Benson. Benson testified that he intended to spank Z.B. on the buttocks but Z.B. was "squirming" and dropped down to his knees in an attempt to avoid the spanking.

Benson testified he had previously spanked the children with his hand and they had just laughed it off. Benson testified he thereafter did "a little bit of research" on spanking and learned "the church actually recommends" spanking. He stated that according to the article he read, "You have to tell them why they're being spanked, what it's for, and the reason behind it and that you should use an object to make it sting and make it quick." When asked why he used a broomstick, Benson testified he had warned them about their behavior before and gave "these kids a lot of latitude."

Z.B.'s father testified about seeing Z.B.'s bruises on Monday evening, March 7, and discussing the bruising with a counselor at Z.B.'s school. The counselor reported the incident to the department of human services (DHS). On March 9, DHS investigator Ruth Stewart conducted a home visit at Benson's house and talked with the three children. When Stewart asked Z.B. if "he had any owies," Z.B. "jumped off the couch, turned his—his back to [Stewart], pulled up his sweat pant legs," and showed Stewart the bruises on the back of his legs "between the knee and just below the buttocks, one on each leg." Stewart described the bruises as "almost oblong in shape," "[a]pproximately three inches long, maybe an inch or more in width, and the one specifically on his right leg

had a dark redness around it, like kind of outlined" the bruise. Stewart called law enforcement because she felt Z.B.'s had sustained "significant injury."

Dr. Michael Jung (a physician who practices medicine, teaches, and serves as the medical director for the Child Advocacy Center) reviewed photographs of Z.B.'s injuries and concluded the bruising was the result of "an inflicted, high impact, sudden deceleration injury with an object." Dr. Jung explained:

> It wasn't from sitting on something or it required significant velocity or speed to injure the tissue in that manner. The location which is in an area that is not over a bony area. It's a soft tissue. It's an injury which the linear nature of it indicates that an object was used.
> The central sparing, where there's no bruising in the inner part of the injury, is less injured than the surrounding tissue, and that occurs when tissue is injured in a high-impact, accelerating type of injury that actually shears the tissue on the edge of the object, and it requires a fairly high velocity or impact to do that.

On appeal, Benson asserts he was not angry or irate and did not spank the children intending to injure them. Benson was charged in relation to his hitting of Z.B.[2] A reasonable juror could find Benson hit Z.B. with the specific intent to cause pain and with knowledge that he was creating a substantial risk to the child's physical health—Benson himself testified he intended the punishment to "sting." And although Benson testified he did not intend to harm the child, the jury was free to reject his claim. *See State v. Sanford*, 814 N.W.2d 611, 615

---

[2] Benson notes neither B.B. nor G.B. sustained injuries. He argued at trial that the fact that he was not charged with assault or child endangerment with respect to the other two children shows the State concedes he did not endanger any of the children's health or safety.

"[T]he decision whether or not to prosecute, and what charges to file, generally rests entirely upon the discretion of the prosecutor." *State v. Perry*, 440 N.W.2d 389, 391 (Iowa 1989); *see also State v. Taeger*, 781 N.W.2d 560, 566 n.1 (Iowa 2010) (noting "[p]rosecutors in Iowa retain discretion not to proceed with the formal filing of criminal charges").

(Iowa 2012) ("Inherent in our standard of review of jury verdicts in criminal cases is the recognition that the jury [is] free to reject certain evidence, and credit other evidence." (alteration in original) (citation omitted)).

Z.B. sustained significant bruises on both legs, which were visible for several days. After hearing the testimony of the witnesses and viewing the pictures of the child's injuries, the jury could reasonably conclude the amount of force used on Z.B. rendered the punishment "abusive rather than corrective in character." *See Arnold*, 543 N.W.2d at 603.

Benson also contends the court erred in instructing the jury. The jury was instructed that to find Benson guilty of assault causing bodily injury, the State had to prove that "Benson did an act which was intended to cause pain or injury to [the child] or which was intended to result in physical contact which was insulting or offensive to [the child]." And to find Benson guilty of child endangerment, "Benson acted with knowledge that he was creating a substantial risk to [the child's] physical, mental, or emotional health or safety." The following instructions were also given to the jury:

> To commit a crime a person must intend to do an act which is against the law. While it is not necessary that a person knows that act is against the law, it is necessary that the person was aware he or she was doing the act and he or she did it voluntarily, not by mistake or accident. You may, but are not required to, conclude a person intends the natural results of his or her acts.

Instruction No. 14.

> "Specific intent" means not only being aware of doing an act and doing it voluntarily, but in addition, doing it with a specific purpose in mind.
> Because determining the defendant's specific intent requires you to decide what the defendant was thinking when an act was done, it is seldom capable of direct proof. Therefore, you should

consider the facts and circumstances surrounding the act to determine the defendant's specific intent. You may, but are not required to, conclude a person intends the natural results of his or her acts.

Instruction No. 15.

Benson objected to these instructions, stating Instruction No. 14 (general intent) was inapplicable because assault causing bodily injury is a specific intent crime. He requested an alternative to Instruction No. 15 (specific intent), which provided: "Specific intent is present when from the circumstances the offender must have subjectively desired the prohibited result."

"We generally review refusals to give jury instructions for errors at law; however, if the requested jury instruction is not required or prohibited by law, we review for abuse of discretion." *State v. Plain*, 898 N.W.2d 801, 816 (Iowa 2017). Yet "[e]rror in giving or refusing to give a jury instruction does not warrant reversal unless it results in prejudice to the complaining party." *State v. Hoyman*, 863 N.W.2d 1, 7 (Iowa 2015) (quoting *State v. Cordero*, 861 N.W.2d 253, 257–58 (Iowa 2015)). "When the error is not of constitutional magnitude, the test of prejudice is whether it sufficiently appears that the rights of the complaining party have been injuriously affected or that the party has suffered a miscarriage of justice." *Plain*, 898 N.W.2d at 817 (citation omitted).

Benson also contends giving both the general intent instruction and the specific intent instruction without reference to which charge the instructions applied was contradictory and would have confused or misled the jury. A similar argument was raised in *State v. Pierce*, 287 N.W.2d 570, 575 (Iowa 1980), where in the court stated,

It is difficult to understand how the jury could be misled into believing the necessary intent could be general when the intent instruction plainly stated that, in contrast to general intent, specific intent requires "a particularized state of mind" and "a determination that the doing of an act shall be with a certain purpose."

We believe the same reasoning applies. Here, specific intent was defined in Instruction No. 15 in part by doing an act "with a specific purpose in mind." The marshalling instruction for assault causing bodily injury, Instruction No. 16, provided, in part, the State had to prove Benson did an act "intended to cause pain or injury to [Z.B.] or intended to result in physical contact which was insulting or offensive to [Z.B.]" It is hard to imagine the jury was confused or misled in believing the general intent instruction applied where the marshalling instruction clearly stated the specified purpose in mind. The same can be said in regard to the child endangerment charge and instructions.

Even assuming the instructions could have been framed more specifically, the instructions given were not incorrect statements of the law, and Benson cannot show he was prejudiced. The specific intent instruction used was the Uniform Jury Instruction 200.2. The closing arguments emphasized assault is a specific intent crime. And Benson himself testified he hit an eight-year-old child with a wooden stick and intended it to "sting." The bruises the child sustained are indicative of the force used. Under the facts of this case, there was strong evidence of guilt. We therefore conclude any error in refusing the requested instruction was not prejudicial.

**AFFIRMED.**