# IN THE SUPREME COURT OF IOWA

No. 17–0650

Filed October 19, 2018

Amended October 25, 2018

**STATE OF IOWA,**

Appellee,

vs.

**OWEN F. BENSON,**

Appellant.

___

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Woodbury County, Jeffrey L. Poulson, Judge.

The defendant seeks further review of a court of appeals decision that affirmed his convictions for assault causing bodily injury and child endangerment. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**

Priscilla E. Forsyth, Sioux City, for appellant.

Thomas J. Miller, Attorney General, Kevin Cmelik, Assistant Attorney General, Patrick Jennings, County Attorney, and Kristine Timmins and Joshua Widman, Assistant County Attorneys, for appellee.

**CHRISTENSEN, Justice.**

In this appeal, Owen Benson contends he did not cross the line from lawful corporal punishment to criminal conduct. Benson maintains there was insufficient evidence to support his conviction for both assault causing bodily injury and child endangerment because the State did not prove his actions exceeded the scope of legal corporal punishment. Similarly, he contends the district court abused its discretion in denying his motion for a new trial because the verdict was contrary to the weight of the evidence. For the reasons set forth below, we conclude the jury instructions were prejudicially erroneous. Accordingly, we vacate the decision of the court of appeals, reverse the judgment of the district court, and remand for a new trial.

Benson also claims that the jury instructions (1) misled the jury because the district court failed to provide a marshaling instruction explaining which form of intent applied to which charge, and (2) did not adequately describe specific intent. For the reasons set forth below, we conclude the jury instructions were prejudicially erroneous. Accordingly, we vacate the decision of the court of appeals, reverse the judgment of the district court, and remand for a new trial for the aforementioned reasons.

## I. Background Facts and Proceedings.

On March 6, 2016, Owen Benson was watching B.B., G.B., and Z.B.—three of his fiancé's children—until their father arrived to take them to his home as part of an arranged custody agreement. The children were approximately eleven, ten, and eight years old at the time. Benson joined the children on the porch carrying the wooden handle from a toy broomstick, upset about alleged damage the children caused to some furniture. Benson subsequently hit B.B. and G.B. twice each on the buttocks with the broom handle. Next, Benson hit Z.B. twice on the back

of his upper legs with the broom handle. The children's father arrived soon after to take them to his home.

The next morning, the children's father noticed bruises on the back of Z.B.'s legs. G.B. and B.B. did not have bruises. The father photographed the bruises and reported them to a school counselor. The school counselor reported the bruises to the Iowa Department of Human Services (DHS), and a child protective investigation commenced.

Ruth Stewart, the DHS investigator, conducted a home visit at Benson's home, where Benson admitted hitting Z.B. but declined to answer her questions fully. When Stewart met with Z.B., she observed bruises on the back of his legs that were "[a]pproximately three inches long, maybe an inch or more in width, and the one specifically on his right leg had a dark redness around it" similar to an outline. After observing Z.B.'s bruises and speaking with Benson and his fiancé's children, Stewart contacted law enforcement and referred Z.B. to the Child Advocacy Center at Mercy Medical Center in Sioux City for a forensic interview.

The forensic interview with Dr. Michael Jung from the Child Advocacy Center revealed that Z.B.'s bruising was a "high-impact acceleration/deceleration injury" resulting from an object. Dr. Jung noted that the injury "wasn't from sitting on something [and] it required significant velocity or speed to injure the tissue in that manner." Further, he explained,

> The central sparing, where there's no bruising in the inner part of the injury, is less injured than the surrounding tissue, and that occurs when tissue is injured in a high-impact, accelerating type of injury that actually shears the tissue on the edge of the object, and it requires a fairly high velocity or impact to do that.

Following the investigation, the State charged Benson with assault causing bodily injury in violation of Iowa Code sections 708.1(2)(*a*) and

708.2(2) (2016), a serious misdemeanor, and child endangerment in violation of Iowa Code sections 726.6(1)(*a*) and 726.6(7), an aggravated misdemeanor, for hitting Z.B. The State did not charge Benson for hitting B.B. or G.B. A jury convicted Benson of assault causing bodily injury and child endangerment. Benson filed a motion for a new trial, arguing the verdict was contrary to the weight of the evidence, and the district court denied this motion at Benson's sentencing hearing.

Benson appealed his convictions, presenting multiple claims on appeal. First, he claimed there was insufficient evidence to support his convictions since the evidence showed his actions were within the bounds of legal corporal punishment. Second, he alleged the district court abused its discretion in denying his motion for a new trial because the verdicts were contrary to the weight of the evidence. Third, Benson argued the district court erred by instructing the jury on both general and specific intent without providing a marshaling instruction explaining which form of intent applied to which charge. Finally, he asserted the jury instructions did not adequately describe specific intent.

The court of appeals affirmed the judgment of the district court. It concluded there was sufficient evidence to support Benson's convictions, especially given Benson's testimony that he intended for the punishment to "sting." The court of appeals also determined the jury instructions were not confusing or misleading since the marshaling instruction "clearly stated the specified purpose in mind." Benson sought further review, which we granted.

## II. Standard of Review.

We review claims of insufficient evidence for correction of errors at law, "and we will uphold a verdict if substantial evidence supports it." *State v. Ramirez,* 895 N.W.2d 884, 890 (Iowa 2017). Substantial evidence

supports a verdict "if, 'when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt.' " *State v. Wickes*, 910 N.W.2d 554, 563 (Iowa 2018) (quoting *State v. Reed*, 875 N.W.2d 693, 705 (Iowa 2016)). Moreover, "[w]e generally review rulings on motions for new trial asserting a verdict is contrary to the weight of the evidence for an abuse of discretion." *Id.* at 563–64 (quoting *State v. Ary*, 877 N.W.2d 686, 706 (Iowa 2016)). An abuse of discretion occurs when the district court "exercises its discretion on grounds clearly untenable or to an extent clearly unreasonable" in such a manner that the district court's decision "is not supported by substantial evidence or . . . is based on an erroneous application of the law." *Id.* at 564 (quoting *State v. Hill*, 878 N.W.2d 269, 272 (Iowa 2016)).

"[W]e review challenges to jury instructions for correction of errors at law." *Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 707 (Iowa 2016) (quoting *Anderson v. State*, 692 N.W.2d 360, 363 (Iowa 2005)). Erroneous jury instructions warrant "reversal when prejudice results." *State v. Coleman*, 907 N.W.2d 124, 138 (Iowa 2018). Prejudice results when jury instructions mislead the jury or materially misstate the law. *Id.* We also "review refusals to give a requested jury instruction for correction of errors at law." *Alcala*, 880 N.W.2d at 707. In doing so, we consider the jury instructions as a whole rather than in isolation to determine whether they correctly state the law. *State v. Harrison*, 914 N.W.2d 178, 188 (Iowa 2018).

### III. Analysis.

**A. Sufficiency of the Evidence.** Benson proclaims we should reverse his convictions because there was insufficient evidence, and he contends the district court abused its discretion when it denied his motion for a new trial since the verdicts were contrary to the weight of the

evidence. To convict Benson of assault causing bodily injury, the State had to prove beyond a reasonable doubt that Benson committed an act "intended to cause pain or injury to, or which [was] intended to result in physical contact which [was] insulting or offensive to [Z.B.], coupled with the apparent ability to execute the act," Iowa Code § 708.1(2)(*a*), and the act caused "bodily injury" to Z.B., *id.* § 708.2(2). Moreover, to convict Benson of child endangerment, the State had to prove beyond a reasonable doubt that Benson was a "person having custody or control over a child" who "[k]nowingly act[ed] in a manner that create[d] a substantial risk to [the] child or minor's physical, mental or emotional health or safety." *Id.* § 726.6(1)(*a*).

Benson contends the State failed to demonstrate that his conduct constituted an act intended to cause pain or injury or to result in offensive physical conduct to support his conviction of assault causing bodily injury. Likewise, he argues the State failed to demonstrate that his conduct created a substantial risk to Z.B.'s health and safety to support his conviction of child endangerment. Rather, Benson proclaims the evidence only demonstrates that his actions constituted "legal corporal punishment as allowed by Iowa law."

"[P]arents have a right to inflict corporal punishment on their child, but that right is restricted by moderation and reasonableness." *State v. Arnold*, 543 N.W.2d 600, 603 (Iowa 1996). When a parent's conduct surpasses "the line of reasonable correction, his or her conduct becomes criminal." *Id.* "The proper test is whether, under the particular circumstances, the amount of force used or the means employed by the parent rendered such punishment abusive rather than corrective in character." *Id.* This determination "varies with the age, physical

condition, and other characteristics of a child as well as with the gravity of the child's misconduct." *Id.*

Viewing the evidence "in the light most favorable to the State," the record contains substantial evidence to support the jury's verdict that Benson is guilty beyond a reasonable doubt of assault causing bodily injury and child endangerment. *Wickes*, 910 N.W.2d at 563 (quoting *Ramirez*, 895 N.W.2d at 890). Benson testified that he used the broomstick handle because the children had previously "laughed and said that didn't hurt" when he spanked them with an open hand. Consequently, he did more research into spanking and discovered guidance from an online article that declared "you should use an object to make [a spanking] sting." Benson testified that he "implemented" that guidance when he hit Z.B. with the broom handle, and a reasonable jury could conclude from this testimony that Benson intended to cause pain, injury, or offensive contact as well as a substantial risk to Z.B.'s health and safety.

Further, there is substantial evidence to support the jury's conclusion that Benson's use of force on Z.B. was "abusive rather than corrective in character." *Arnold*, 543 N.W.2d at 603. Z.B. was wearing jean pants when Benson hit him with the broomstick, yet Z.B. had bruises that were still visible four days after the incident. *See id.* at 603 (holding there was sufficient evidence to support a child endangerment conviction when the child's bruises "were clearly visible three days after the incident"). The bruises were "[a]pproximately three inches long, maybe an inch or more in width, and the one specifically on his right leg had a dark redness around it." As Dr. Jung explained at trial, Z.B. sustained a "high-impact acceleration/deceleration injury" that "required significant velocity or speed to injure the tissue in that manner." Though Benson contends

he did not spank Z.B. with the intent to injure him because his conduct was only to discipline Z.B. for allegedly damaging furniture, "the jury [is] free to reject certain evidence, and credit other evidence." *Reed*, 875 N.W.2d at 705 (alteration in original) (quoting *State v. Thomas*, 847 N.W.2d 438, 442 (Iowa 2014)). Based on the evidence that Benson used the broom handle because he wanted the use of force to "sting" and the severity of the bruises, the State presented substantial evidence to "convince a rational jury that defendant [was] guilty beyond a reasonable doubt." *Wickes*, 910 N.W.2d at 563 (quoting *Ramirez*, 895 N.W.2d at 890).

Additionally, the district court did not abuse its discretion in denying Benson's motion for a new trial because the verdicts were not contrary to the weight of the evidence. "A verdict is contrary to the weight of the evidence only when 'a greater amount of credible evidence supports one side of an issue or cause than the other.' " *Ary*, 877 N.W.2d at 706 (quoting *State v. Shanahan*, 712 N.W.2d 121, 135 (Iowa 2006)). "[A] district court should only grant a motion for new trial 'in the extraordinary case in which the evidence preponderates heavily against the verdict rendered.' " *Wickes*, 910 N.W.2d at 570 (quoting *Ary*, 877 N.W.2d at 706).

This is not the rare case in which the verdicts run contrary to the weight of the evidence. As we have already noted, there was substantial evidence to support the jury's finding that Benson was guilty of assault causing bodily injury and child endangerment. This is true even without considering the evidence in the light most favorable to the State. Thus, the district court did not abuse its discretion by denying Benson's motion for a new trial.

**B. Jury Instructions Regarding Intent.** Benson argues the jury instructions did not properly inform the jury which form of intent to apply

to which charges, nor did they adequately convey the definition of "specific intent." The district court included the following marshaling instructions:

INSTRUCTION NO. 14

To commit a crime, a person must intend to do an act which is against the law. While it is not necessary that a person knows that act is against the law, it is necessary that the person was aware he or she was doing the act and he or she did it voluntarily, not by mistake or accident. You may, but are not required to, conclude a person intends the natural results of his or her acts.

INSTRUCTION NO. 15

"Specific intent" means not only being aware of doing an act and doing it voluntarily, but in addition, doing it with a specific purpose in mind.

Because determining the defendant's specific intent requires you to decide what the defendant was thinking when an act was done, it is seldom capable of direct proof. Therefore, you should consider the facts and circumstances surrounding the act to determine the defendant's specific intent. You may, but are not required to, conclude a person intends the natural results of his or her acts.

INSTRUCTION NO. 16

The State must prove all of the following elements of Assault Causing Bodily Injury:

1. On or about the 6th day of March, 2016, Owen Benson did an act which was intended to cause pain or injury to [Z.B.] or which was intended to result in physical contact which was insulting or offensive to [Z.B.].

2. Owen Benson had the apparent ability to do the act.

3. Owen Benson's act caused bodily injury to [Z.B.] as defined in Instruction No. 19.

. . . .

INSTRUCTION NO. 20

The State must prove all of the following elements of Child Endangerment:

1.  On or about the 6th day of March, 2016, Owen Benson was a person having custody or control of [Z.B.]

2.  [Z.B.] was under the age of fourteen years.

3.  Owen Benson acted with knowledge that he was creating a substantial risk to [Z.B.'s] physical, mental, or emotional health or safety.

Benson objected to the general-intent instruction, claiming it was unnecessary since assault is a specific-intent crime. Benson also objected to the instruction on specific intent and requested the court add language informing the jury that "[s]pecific intent is present when from the circumstances the offender must have subjectively desired the prohibited result." *Bacon ex rel. Bacon v. Bacon*, 567 N.W.2d 414, 417 (Iowa 1997) (quoting *State v. Redmon*, 244 N.W.2d 792, 797 (Iowa 1976)). The district court overruled Benson's objections and refused to submit Benson's requested jury instruction. On appeal, Benson contends the inclusion of instructions on both general intent and specific intent without a marshaling instruction explaining which intent applied to which charge misled the jury. He also challenges the district court's refusal to include his requested language in the instruction on specific intent, reasoning his proposed language would have "more appropriately instruct[ed] the jury as to the elements of the case."

In order to determine whether the jury instructions misled the jury or materially misstated the law, we must first examine the form of intent required for both assault causing bodily injury and child endangerment. Notably, we have never analyzed whether child endangerment requires specific or general intent, though the district court appears to have instructed the jury that it is a general-intent crime by stating that the State had to prove Benson "acted with knowledge." Specific intent exists "when from the circumstances the offender . . . subjectively desired the prohibited

result," whereas general intent is present "when from the circumstances the prohibited result may reasonably be expected to follow from the offender's voluntary act, irrespective of any subjective desire to have accomplished such result." *State v. Fountain*, 786 N.W.2d 260, 264 (Iowa 2010) (quoting *Redmon*, 244 N.W.2d at 797). This distinction parallels the federal distinction between specific and general intent, as the United States Supreme Court has declared, " '[P]urpose' corresponds loosely with the common-law concept of specific intent, while 'knowledge' corresponds loosely with the concept of general intent." *United States v. Bailey*, 444 U.S. 394, 405, 100 S. Ct. 624, 632 (1980). Since Benson was charged with child endangerment under Iowa Code section 726.6(1)(*a*), which requires a person to act "knowingly," the district court was correct to instruct the jury that child endangerment is a general-intent crime. *See* Iowa Code § 726.6(1)(*a*).

In contrast, assault "includes a specific intent component." *Fountain*, 786 N.W.2d at 265. "Although in the past we have defined the assault alternative in section 708.1(2) as a general intent crime," we overruled those cases and declared it a specific-intent crime in *State v. Heard*, 636 N.W.2d 227, 231 (Iowa 2001). We based our holding in *Heard* on the language of section 708.1(2), which requires intent to cause pain, injury, offensive contact, or fear of injurious and immediate physical contact. *Id.* at 231–32; *see also* Iowa Code § 708.1(2)(*a*)–(*b*).

Following *Heard*, the legislature amended the language of section 708.1, adding, "An assault as defined in this section is a general intent crime." *State v. Bedard*, 668 N.W.2d 598, 601 (Iowa 2003) (quoting Iowa Code § 708.1(1) (2003)). However, we noted in *Bedard* that "this amendment did not alter the substantive content of the statute as it pertains to the element of the crime," and the language regarding intent in

the statute remained an element of the offense. *Id.* at 601. We have continued to focus "on the elements of the crime," proclaiming in *Fountain* that assault "includes a specific intent component" because the elements "include an act that is done to achieve the additional consequence of causing the victim pain, injury[,] or offensive contact." 786 N.W.2d at 265. Thus, regardless of the legislature's designation, assault substantively is a specific-intent crime under section 708.1 based upon the language in the statute. *Id.*

The issue in this case is whether the jury instructions "convey[ed] the applicable law in such a way that the jury ha[d] a clear understanding of the issues" before it. *Rivera v. Woodward Res. Ctr.*, 865 N.W.2d 887, 892 (Iowa 2015) (quoting *Thompson v. City of Des Moines*, 564 N.W.2d 839, 846 (Iowa 1997)). That was not the case here. Based on our review of the jury instructions as a whole, the district court's failure to provide a marshaling instruction explaining which form of intent applied to which charge rendered the instructions confusing and misleading.

For example, the court of appeals concluded that the language of Instruction No. 15 and Instruction No. 16 clearly conveyed to the jury that assault causing bodily injury required specific intent. In part, Instruction No. 15 defined "specific intent" as an act done "with a specific purpose in mind," and Instruction No. 16 proclaimed the State had to show Benson did an act "*intended to cause* pain or injury to [Z.B.]" or "*intended to result in* physical contact which was insulting or offensive to [Z.B.]" in order to convict Benson of assault causing bodily injury. (Emphasis added.) However, the court of appeals overlooked the impact of Instruction No. 14, which instructed the jury that "[t]o commit a crime, a person must *intend to do an act* which is against the law . . . ." (Emphasis added.) The similarities between "intend[ing] to cause pain or injury to [Z.B.] [or]

intend[ing] to result in physical contact" and "intend[ing] to do an act" create confusion about the form of intent applicable to assault causing bodily injury. This confusion could have been resolved with a marshaling instruction explaining which form of intent applied to which charge, such as:

INSTRUCTION NO. 15

[*Concerning Instruction 16 only,*] "specific intent" means not only being aware of doing an act and doing it voluntarily, but in addition, doing it with a specific purpose in mind . . . .

Moreover, the record contains instances in which statements made to the jury during Benson's trial may have created further confusion for the jury as to the requisite intent for each charge. In its closing, the State began to walk the jury through the elements of assault causing bodily injury, noting,

[T]he State will have to prove that on or about the 6th day of March, the defendant did an act which was intended to cause pain or injury, the defendant had the apparent ability to do the act, and that the defendant caused bodily injury to [Z.B.].

The State continued to discuss the elements of assault causing bodily injury, explaining bodily injury then discussing intent. The State explained,

[A]nd so going back to our main marshaling instruction, looking at the elements we have to consider, the bodily injury element is proven. So that leaves us with the question of did the act—was the act intended to cause pain or injury?

You're going to be instructed on intent in this case. You're going to be given the general criminal intent definition. And the things you focus on there, basically was the defendant aware that he was doing an act and did he do it voluntarily?

The Court is also going to instruct you on the specific intent instruction under Iowa law. And that is not only knowing that the defendant was aware he was doing an act, he did it voluntarily, the State also has to show that the defendant did the act with a specific purpose in mind.

By discussing both general and specific intent in its discussion on the elements of assault causing bodily injury, the State may have blurred the jury's understanding of the requisite form of intent for assault causing bodily injury.

Similarly, the State argued on rebuttal,

> The State's argument is that the defendant *consciously was aware of his actions* on March 6th and that those actions constituted Assault Causing Bodily Injury and Child Endangerment.
>
> He *acted with a specific purpose* in mind when he picked the stick up and struck [Z.B.] on the buttocks two times . . . .

(Emphasis added.) While the State argued Benson's actions constituted assault causing bodily injury—a specific-intent crime—if Benson "consciously was aware of his actions," the jury instruction on general intent informed the jury that general intent is present when "the person was aware he or she was doing the act." These are essentially the same descriptions, yet they discuss two different forms of intent. Thus, the State incorrectly described to the jury the form of intent required to convict Benson of assault causing bodily injury.

Upon reading the jury instructions as a whole, it is evident that the district court's refusal to submit Benson's requested marshaling instruction explaining which form of intent applied to which charge was erroneous because the submitted jury instructions did not "convey the applicable law in such a way that the jury ha[d] a clear understanding of the issues." *Rivera*, 865 N.W.2d at 892 (quoting *Thompson*, 564 N.W.2d at 846). As a result, Benson was prejudiced because the instructions misled the jury. *See Coleman*, 907 N.W.2d at 138.

In contrast, the district court did not err in refusing to submit Benson's requested jury instruction on specific intent. The district court

must submit "a requested jury instruction if it correctly states the applicable law and is not embodied in other instructions." *Alcala*, 880 N.W.2d at 707 (quoting *Sonnek v. Warren*, 522 N.W.2d 45, 47 (Iowa 1994)). Here, Benson's requested jury instruction that "[s]pecific intent is present when from the circumstances the offender must have subjectively desired the prohibited result," *Bacon*, 567 N.W.2d at 417 (quoting *Redmon*, 244 N.W.2d at 797), was already adequately conveyed in the jury instructions. The district court instructed the jury that specific intent means "doing [an act] with a specific purpose in mind." This instruction was taken verbatim from the Iowa State Bar Association's Criminal Jury Instructions, and it correctly states the law. *See* Iowa State Bar Ass'n, Iowa Criminal Jury Instructions 200.2 (2016) (" 'Specific intent' means not only being aware of doing an act and doing it voluntarily, but in addition, doing it with a specific purpose in mind."). Thus, the district court's denial of Benson's requested specific-intent instruction was not erroneous since the submitted instructions already embodied the requested instruction and accurately conveyed the law. Nevertheless, we reverse and remand Benson's case to the district court for a new trial due to the prejudicial jury instructions that failed to inform the jury of the applicable form of intent for each charge. *See, e.g., State v. Hoyman*, 863 N.W.2d 1, 19 (Iowa 2015) ("[C]ontradictory and confusing instructions will necessitate a new trial.").

**IV.  Conclusion.**

We vacate the decision of the court of appeals, reverse the judgment of the district court, and remand for a new trial for the aforementioned reasons.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**