# IN THE COURT OF APPEALS OF IOWA

————————

No. 25-1225
Filed April 15, 2026

————————

**State of Iowa,**
Plaintiff–Appellee,
v.
**Clarence Jaay Jackson,**
Defendant–Appellant.

————————

Appeal from the Iowa District Court for Buchanan County,
The Honorable John J. Sullivan, Judge.

————————

**AFFIRMED**

————————

Katherine R.J. Scott of New Point Law Firm, PLC, Ames, attorney for
appellant.

Brenna Bird, Attorney General, and Joseph D. Ferrentino, Assistant
Attorney General, attorneys for appellee.

————————

Considered without oral argument
by Greer, P.J., and Schumacher and Chicchelly, JJ.
Opinion by Schumacher, J.

**SCHUMACHER, Judge.**

Clarence Jackson appeals his conviction for assault causing bodily injury following a bench trial, asserting the evidence was insufficient to support the conviction because: (1) the district court erred in determining Jackson's corporal punishment justification defense only applies to parents; (2) Jackson had sufficient control over the child victim, W.W., to qualify as a parent to claim the corporal punishment defense, and (3) the punishment of W.W. by Jackson was reasonable. Jackson also asserts the district court abused its discretion in sentencing.

## I.      Background Facts & Proceedings.

Ashley Walker lived in Independence with her six children, three of which were also the biological children of Jackson. Walker and Jackson never married and did not live together.

Jackson visited Walker and the children at Walker's home, sometimes staying overnight, for a couple weekends a month. Walker allowed Jackson to come and go from the home as he pleased and permitted Jackson to act as a disciplinary figure towards all the children when she felt she could not discipline them.

On the night of the incident, Jackson came unannounced to Walker's residence after she had gone to bed. When Jackson arrived, he demanded that eight-year-old W.W. clean the living room and his bedroom. W.W. is not one of Jackson's children. W.W. proceeded to clean the living room but informed Jackson that his room was already clean. Jackson threatened to give W.W. a "whooping" with a belt. W.W. told Jackson that he would call his father, Perry, if Jackson "whooped" him.

Jackson exited the house to retrieve a leather belt from his car and confronted W.W. in W.W.'s bedroom. Jackson ordered W.W. to pull down his pants. W.W. refused, so Jackson pulled them down. Jackson struck W.W. across the buttocks several times with the belt. While this occurred, W.W.'s older sister recorded the incident on her phone and sent the recordings to Perry via text message.

The next day, Father's Day, Perry picked W.W. up from Walker's home. Perry drove to a local Burger King to use a private bathroom to examine W.W. Perry observed bruising on W.W.'s buttocks. He then drove W.W. to a police station, where photographs of the injuries were taken. The Department of Health and Human Services became involved, and W.W. stayed with Perry for ten days before returning to Walker's home. Perry testified that the bruising was visible for at least a week after the incident.

Following a bench trial, Jackson was convicted of assault causing bodily injury in violation of Iowa Code section 708.2(2) (2023). The district court sentenced Jackson to sixty days in jail.

## II. Analysis.

### (A) Sufficiency of the Evidence.

Jackson challenges the sufficiency of the evidence supporting his conviction, asserting the district court erred in concluding that the corporal punishment justification defense strictly applies to parents. We review sufficiency-of-the-evidence claims for the correction of errors at law. *State v. Schooley*, 13 N.W.3d 608, 614 (Iowa 2024). We defer to the district court's verdict if "it is supported by substantial evidence 'sufficient to convince a rational trier of fact the defendant is guilty beyond a reasonable doubt.'" *Id.* (citation omitted). "[W]e view the evidence in the light most favorable to the

State, including all 'legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence.'" *Id.* (citation omitted).

The district court utilized the following jury instruction, which required that the State prove the following elements:

    a.   Clarence Jackson was in Buchanan County, Iowa.

    b.   Clarence Jackson did an act which was intended to cause pain or injury or result in physical contact which was insulting or offensive or place W.W. in fear of an immediate physical contact which would have been painful, injurious, insulting or offensive to W.W.

    c.   Clarence Jackson had the apparent ability to do the act.

    d.   Clarence Jackson's act caused a bodily injury to W.W.

In Iowa, our supreme court has held that "parents have a right to inflict corporal punishment on their child, but that right is restricted by moderation and reasonableness." *Id.* (quoting *State v. Arnold*, 543 N.W.2d 600, 603 (Iowa 1996)). The "punishment must be corrective rather than abusive in character." *Id.* "This determination 'varies with the age, physical condition, and other characteristics of a child as well as with the gravity of the child's misconduct.'" *Id.* (citation omitted). Usually, the corporal punishment justification is a defense to child endangerment, but it can also be used as a defense against an assault charge. *See State v. Dawson*, No. 23-1650, 2024 WL 5153651, at *2 (Iowa Ct. App. Dec. 18, 2024).

Jackson cites to cases which he asserts support his argument that the district court incorrectly "construed the corporal punishment defense to only apply to parents." *See State v. Benson*, 919 N.W.2d 237, 240–41 (Iowa 2018) (assuming without deciding that a fiancé accused of assaulting a child could assert corporal punishment defense); *State v. Collins*, No. 22-1832, 2024 WL 2045329, at *1, *3 (Iowa Ct. App. May 8, 2024) (assuming without

deciding that a step-grandmother could assert corporal punishment defense); *In re Marriage of Benhart*, No. 11-0017, 2012 WL 170610, at *1, 2 (Iowa Ct. App. Jan. 19, 2012) (determining if a step-mother's punishment warranted a custody modification). These cases assume without deciding that corporal punishment defense can apply to nonparents. For the purpose of this appeal, we need not address whether the defense could be utilized by Jackson.

Even if Jackson qualifies as a "parent" to W.W., which is unlikely given his sporadic and brief visits to Walker's home, we agree with the district court that the punishment inflicted was not reasonable. *See Schooley*, 13 N.W.3d at 614. The district court determined:

> Even if he had such a right, his infliction of corporal punishment was not reasonable considering the circumstances. W.W.'s alleged failure to clean his room to Clarence's standard, and whether W.W. was disrespectful to Clarence, did not rise to the level requiring administration of striking an 8-year-old child three times with a belt, culminating with the leaving of marks and bruising. The Court does not find the use of the belt was corrective but was abusive. At the end of the audio the Defendant can be heard using stern vulgar language, which reflects the Defendant was upset.

There is no question that Jackson "did an act which was intended to cause pain or injury . . . which was insulting or offensive" to W.W. And because we find, even if Jackson could assert the corporal punishment defense, that the punishment was not reasonable, the district court did not err in determining sufficient evidence supported the conviction. *See Arnold*, 543 N.W.2d at 603.

### (B)   Abuse of Discretion in Sentencing.

Jackson next contends the district court abused its discretion in imposing sixty days in jail instead of a deferred judgment or placing him on probation.

5

Sentencing decisions by the district court are "cloaked with a strong presumption in [their] favor," and we will only overturn a particular sentence "for an abuse of discretion or the consideration of inappropriate matters." *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002). "An abuse of discretion will not be found unless we are able to discern that the decision was exercised on grounds or for reasons that were clearly untenable or unreasonable." *Id.* When reviewing sentencing decisions, we "consider the societal goals of sentencing criminal offenders, which focus on rehabilitation of the offender and the protection of the community from further offenses." *Id.* (citing Iowa Code § 901.5). A sentencing court should also consider factors such as "the nature of the offense, the attending circumstances, the age, character and propensity of the offender, and the chances of reform." *Id.* at 725.

Jackson argues that the district court, in refusing to grant probation or a deferred judgment, failed to explain its reasoning for imposing incarceration in jail. The record belies Jackson's argument. The sentencing court explained the assault was unreasonable and unnecessary, Jackson had no right to discipline W.W., his statements to the presentence investigator were concerning, and that his actions "should not have been done at all." The court also explained it considered the relevant factors outlined above when making its sentencing decision. We find there was no abuse of discretion by the district court in pronouncing its sentence.

### III.    Conclusion.

For the reasons above, we affirm the district court.

**AFFIRMED.**

6