**IN THE COURT OF APPEALS OF IOWA**

No. 18-1266
Filed October 9, 2019

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**PATRICK LAVERN HOLT,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Cerro Gordo County, James M. Drew, Judge.

Patrick Holt appeals his conviction and sentence for lascivious acts with a child. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, (until withdrawal) and Robert P. Ranschau, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Richard J. Bennett, Assistant Attorney General, for appellee.

Considered by Vaitheswaran, P.J., and Potterfield and Greer, JJ.

**GREER, Judge.**

Patrick Holt appeals his conviction and sentence for lascivious acts with a child. He raises four arguments on appeal: (1) the court erred in overruling his motion for new trial; (2) his counsel was ineffective for failing to object to an expert witness' improper vouching testimony; (3) the court erred by instructing the jury on general and specific intent; and (4) the court abused its discretion in issuing his sentence. On our review, we affirm.

**I. Background Facts and Proceedings.**

In 2018, Patrick Holt was charged with one count of lascivious acts with a child in violation of Iowa Code section 709.8(1), (2)(a) (2013). The case proceeded to a jury trial.

At trial, the evidence established that almost every day during the summer of 2014, eleven-year-old L.K. and her mother, A.K., spent time at Holt's house in Mason City, Iowa.[1] Holt often bought L.K. clothing and toys, and he took L.K. and her mother on trips to the Grotto of the Redemption in West Bend and an Iowa Cubs baseball game in Des Moines.

During one of the summer visits, A.K. left L.K. at Holt's house and went to a gas station nearby. According to L.K., while her mother was gone, L.K. and Holt were in an upstairs bedroom called the "girl's room,"[2] sitting in front of a desk with a computer. Holt pulled up a pornographic video on the computer, began rubbing

---

[1] At the time of trial, A.K. was jailed on a drug charge and had not seen L.K. for three years.

[2] Holt's house had three bedrooms: his room, a "girl's room," and a "boy's room." The girl's room had girls' clothing and toys, and the boy's room had boys' clothing and toys. Holt has a son and a daughter, both of whom were in their late twenties at the time of trial.

his penis, and then touched L.K.'s vagina on top of and under her clothing. This continued for about a minute until L.K. heard her mother return to the house and she ran downstairs to meet her. L.K. testified that she was glad and relieved when her mother returned to the house. They left soon after, but L.K. remembers having to go back with her mother to Holt's house on other occasions later that summer. Holt denies all of these allegations.

As further support for L.K.'s version, A.K. testified that when she returned, L.K. met her at the door, hysterical, sobbing, and upset. L.K. immediately told her that Holt had tried to make her touch him and that he had touched her. A.K. testified that they left right away and never spoke to Holt again.

Trial testimony of A.K. and L.K. highlighted other troubling interactions with Holt. For example, he once bought L.K. a two-piece swimsuit and wanted her to try it on and show him. L.K. felt uncomfortable and refused. On another occasion, L.K. testified that Holt once gave her a gift bag and asked her to sit on his lap while she opened it. A.K. once saw Holt brush his arm briefly across L.K.'s chest and, more than once, he patted L.K. on the bottom when he gave her hugs. More troubling, A.K. also testified that she had seen pornographic pictures and videos on the computer in the girl's room and had seen pornographic magazines around the house.

For expert testimony, the State called Miranda Kracke, a forensic interviewer with the Allen Child Protection Center. Kracke had interviewed L.K. as part of the investigation for this case. Before trial, Holt moved to limit Kracke's testimony to avoid improper vouching for L.K.'s credibility. The court ruled that Kracke could testify generally but could not testify about L.K.'s case specifically.

The court cautioned Holt's counsel to object if she believed Kracke's testimony was crossing the line into improper vouching.

Limiting her testimony, Kracke did testify that it is common for children who have experienced sexual abuse not to report the abuse right away and not to disclose all of the abuse at once. She discussed reasons children wait to report, including having parents who are not supportive.

Kracke also testified about "grooming," which she described as "a desensitization process, . . . a process of gaining trust to eventually gain access, in this case—in the case of grooming as we're talking about it, for sexual access to a child." She also described common grooming tactics:

> So sometimes in cases where then an investigative team is concerned that grooming may have occurred, children have talked to me about either being shown pornography as a way to normalize sex or talking about sex, just to make it seem like it's something that's okay to discuss. Sometimes children have talked to me about receiving gifts or candy, stuffed animals, toys, different things like that, just as part of being made to feel special or being singled out in some way. Sometimes in cases I've had where there, like, are multiple siblings, that child felt special or different compared to their brothers or sisters, just different ways that they are then feeling special. Sometimes it also involves physical contact so lots of kids talk with me about wrestling or back rubs that then eventually lead to more overt sexual activity.

To attack L.K.'s credibility, Holt called L.K.'s school guidance counselor, who met weekly with L.K. in fifth and sixth grade around the time of the alleged assault. L.K. revealed to the counselor that an unnamed man in the neighborhood had made her feel uncomfortable. The counselor asked L.K. if this man did anything to her, and she said no but "she felt creeped out by the way he looked at her."

Another defense witness, Marcella Joyce, testified that around the time of the alleged assault, she and her daughter sometimes stayed at Holt's house. Joyce stayed in the boy's room and her daughter stayed in the girl's room. Responding to the existence of pornography on the computer, Joyce testified that the computer in the girl's room did not work and did not have a keyboard. Moreover, Joyce never saw Holt inappropriately touch L.K.

Holt testified on his own behalf, denying L.K.'s allegations. To challenge the credibility of L.K.'s version of events, Holt testified he has had a medical condition called "buried penis syndrome" since 1996.[3] According to Holt, during the summer of 2014, only his urethra was visible as skin had contracted around the rest of his penis and he could not get an erection. He underwent an unsuccessful corrective surgery in 2001. After that failed procedure, the doctor said he would not attempt surgery again unless Holt lost one hundred pounds. Although he lost the weight, Holt did not undergo a second surgery until 2017, after the conduct alleged here.

Holt also called Dr. Erickson, the surgeon who performed his second surgery, as a witness. Dr. Erickson testified "the only thing that you could . . . reasonably see when I first met him [in 2017] was the glans penis, which is the head of the penis." Because his treatment occurred later, Dr. Erickson lacked knowledge of how much of Holt's penis was visible before 2017. Despite the condition, Dr. Erickson testified that while only a portion of Holt's penis was visible,

---

[3] Dr. Bradley Erickson first examined Holt in 2017. He described Holt's condition as follows: "[H]e has morbid obesity, and that led to what we call a pannus, which is a large amount of skin that hangs off the abdominal wall and in his case over the penis, which will effectively bury the penis and disallow you from seeing the tip of the penis."

Holt was still able to get erections and would experience the sensation of an erection. Likewise, Holt's medical records also revealed that he could get erections sometimes.

A jury convicted Holt of lascivious acts with a child. The district court sentenced Holt to an indeterminate, ten-year prison sentence as well as a special lifetime sentence under Iowa Code chapter 903B. As a result of this verdict, Holt must now register as a sex offender. Holt appeals.

## II. Standard of Review.

"We generally review rulings on motions for new trial asserting a verdict is contrary to the weight of the evidence for an abuse of discretion." *State v. Ary*, 877 N.W.2d 686, 706 (Iowa 2016). An abuse of discretion exists when the court "exercises its discretion on grounds clearly untenable or to an extent clearly unreasonable." *State v. Wickes*, 910 N.W.2d 554, 564 (Iowa 2018) (quoting *State v. Hill*, 878 N.W. 2d 269, 272 (Iowa 2016)).

We review ineffective-assistance-of-counsel claims de novo. *State v. Lilly*, 930 N.W.2d 293, 298 (Iowa 2019). "[W]e review challenges to jury instructions for correction of errors at law." *State v. Benson*, 919 N.W.2d 237, 241 (Iowa 2018) (quoting *Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 707 (Iowa 2016)). We review a sentence imposed in a criminal case for correction of errors of law. Iowa R. App. P. 6.907; *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002). We will not disturb a sentence unless the defendant shows an abuse of discretion or a defect in the sentencing procedure. *State v. Witham*, 583 N.W.2d 677, 678 (Iowa 1998).

## III. Analysis.

We address the four arguments Holt raises on appeal.

**A. Motion for New Trial.** Holt claims that because of the discrepancies between L.K.'s testimony and other witnesses' testimony, L.K.'s testimony was not credible, the verdict was contrary to the weight of the evidence, and the district court abused its discretion by refusing to grant a new trial. *See* Iowa R. Crim. P. 2.24(2)(b)(6). "A verdict is contrary to the weight of the evidence only when 'a greater amount of credible evidence supports one side of an issue or cause than the other.'" *Ary*, 877 N.W.2d at 706 (quoting *State v. Shanahan*, 712 N.W.2d 121, 135 (Iowa 2006)).

> The weight-of-the-evidence standard requires the district court to consider whether more "credible evidence" supports the verdict rendered than supports the alternative verdict. It is broader than the sufficiency-of-the-evidence standard in that it permits the court to consider the credibility of witnesses. Nonetheless, it is also more stringent than the sufficiency-of-the-evidence standard in that it allows the court to grant a motion for new trial only if more evidence supports the alternative verdict as opposed to the verdict rendered. The question for the court is not whether there was sufficient credible evidence to support the verdict rendered or an alternative verdict, but whether "a greater amount of credible evidence" suggests the verdict rendered was a miscarriage of justice.

*Id.* (quoting *State v. Ellis*, 578 N.W.2d 655, 658–59 (Iowa 1998)). A court should only grant a motion for new trial on this ground "in the extraordinary case in which the evidence preponderates heavily against the verdict rendered." *Id.*

In denying the motion for new trial, the district court determined,

> With respect to the motion for new trial, unlike the motions at the close of the State's evidence where evidence must be viewed in the light most favorable to the State, the Court applies the weight of the evidence standard on a motion for new trial.
> In doing so, I note that the jury obviously believed the testimony of [L.K.] during the course of the trial. It was my observation while watching her testify that she was appropriately emotional given the circumstances, did not appear to be manufacturing emotions or overacting, trying to sell anything to the Court.

I also recognize that there was evidence presented on behalf of the defense regarding Mr. Holt's physical condition. And to that, I would note that first of all, only [L.K.] and Mr. Holt know exactly what was seen and what happened on that day. The doctor wasn't present. Perhaps [L.K.] is mistaken in what she believes she saw; perhaps not. Whether or not Mr. Holt had an erection at the time is not an element of the offense, and so this is merely a matter that would go towards credibility. As I've indicated, the jury obviously believed [L.K.]. And I found her testimony to be convincing as well.

I would also note that there was evidence presented from which the jury could conclude that Mr. Holt was grooming, trying to set up this offense, which could also support the jury's decision. Juries are free to accept or reject any evidence that they choose to. The mere fact that there are conflicts in the evidence does not require a new trial. [L.K.] was credible in the jury's opinion, as well as the Court's.

We agree with the district court that the jury's verdict was not contrary to the weight of the evidence. The district court did not abuse its discretion by denying Holt's motion for a new trial.

**B. Improper Vouching.** To prevail on an ineffective-assistance-of-counsel claim,[4] Holt has the burden to prove "(1) counsel failed to perform an essential duty and (2) prejudice resulted." *Shanahan*, 712 N.W.2d at 136 (quoting *Bowman v. State*, 710 N.W.2d 200, 203 (Iowa 2006)). Counsel fails an essential duty if their performance was outside the normal range of competency "measured against the standard of reasonably competent practitioner with the presumption that the attorney performed [their] duties in a competent manner." *State v. Begey*, 672 N.W.2d 747, 749 (Iowa 2003).

---

[4] Effective July 1, 2019, the legislature prohibited an appellate court from addressing an ineffective-assistance-of-counsel claim on direct appeal. 2019 Iowa Acts ch. 140, § 31 (codified at Iowa Code § 814.7 (2019)). The Iowa Supreme Court determined this statutory amendment applies prospectively only. *State v. Macke*, ___ N.W.2d ___, ___, 2019 WL 4382985, at *7 (Iowa 2019) ("We conclude the absence of retroactivity language in sections 814.6 and 814.7 means those provisions apply only prospectively and do not apply to cases pending on July 1, 2019."). For that reason, the statutory amendment does not affect this case.

Holt argues the record on this direct appeal is sufficient to address his ineffectiveness claim. We agree.

To illustrate his counsel's ineffectiveness, Holt claims his trial counsel failed to object to expert Kracke's testimony about unsupportive parents being a reason children delay reporting sexual abuse and about grooming techniques such as showing pornography, giving gifts, and making physical contact. Exercising legal competence, Holt's counsel moved in limine regarding Kracke's testimony and other issues, and the district court ruled that Kracke could testify generally but not specifically about L.K.'s case. At trial, Holt's counsel objected once during Kracke's testimony but did not object to any of the testimony as improper vouching.

Iowa Rule of Evidence 5.702 and Iowa Supreme Court precedent govern the admissibility of expert opinion testimony related to vouching. *See State v. Brown*, 856 N.W.2d 685, 688–89 (Iowa 2014) (holding that an expert witness report impermissibly vouched for the child's credibility by stating that the child's disclosure of abuse was "significant and that an investigation is clearly warranted"); *State v. Dudley*, 856 N.W.2d 668, 676–77 (Iowa 2014) (holding that an expert witness impermissibly vouched for the credibility of the child when the expert opined that the child's "symptoms were consistent with a child dealing with and suffering from sexual abuse trauma"); *see also State v. Jacquez*, 856 N.W.2d 663, 666 (Iowa 2014) (holding that the expert impermissibly vouched for the child's credibility by testifying that the child's behavior was consistent with a child who had been traumatized multiple times). Experts may "express opinions on matters that explain relevant mental and psychological symptoms present in sexually abused children. However, . . . 'most courts reject expert testimony that either directly or

indirectly renders an opinion on the credibility or truthfulness of a witness.'" *Dudley*, 856 N.W.2d at 676 (quoting *State v. Myers*, 382 N.W.2d 91, 97 (Iowa 1986)); *see also Myers*, 382 N.W.2d at 97–98 (finding a "'fine but essential' line between an 'opinion which would be truly helpful to the jury and that which merely conveys a conclusion concerning defendant's legal guilt" (quoting *State v. Horton*, 231 N.W.2d 36, 38 (Iowa 1975)).

Even though Kracke testified generally about grooming behaviors and reasons children do not report abuse right away, she did not tell the jury that she had interviewed L.K., nor did she discuss L.K.'s allegations. In the general sense, she defined grooming as "a process of gaining trust to eventually gain access, *in this case*—in the case of grooming as we're talking about it, for sexual access to a child." (Emphasis added.) While she said "in this case," she did not reference L.K. specifically, and she clarified that she meant cases of child sexual abuse. After considering the relevant case law, we conclude Kracke's testimony did not constitute improper vouching. For that reason, Holt cannot establish that his counsel was ineffective for failing to object to this testimony at trial.

**C. Jury Instructions.** Holt next argues that the district court erred by instructing the jury on both general and specific intent. Lascivious acts with a child is a specific intent crime, and intent is a necessary element of the offense. *See* Iowa Code § 709.8(1).

At trial, the court gave instructions defining both general intent and specific intent. To provide further guidance, the district court appropriately gave the marshaling instruction for lascivious acts with a child, which required the jury to find beyond a reasonable doubt that Holt fondled or touched L.K.'s genitals or

pubes and that he "did so with the *specific intent* to arouse or satisfy the sexual desires of the defendant or [L.K.]." (Emphasis added.)

We must determine "whether the jury instructions 'convey[ed] the applicable law in such a way that the jury ha[d] a clear understanding of the issues' before it." *Benson*, 919 N.W.2d at 245 (quoting *Rivera v. Woodward Res. Ctr.*, 865 N.W.2d 887, 892 (Iowa 2015)). Here, the marshaling instruction explicitly informed the jury that for Holt to be guilty of the charged offense, the jury had to find that he acted with specific intent. We conclude it was not error for the district court to include an instruction defining general intent.

**D. Sentence.** Finally, Holt argues the district court erred by considering improper factors when imposing his sentence. In effect, Holt argues he should have received a suspended sentence and probation instead of incarceration because of his age, lack of criminal record, and the fact that he had no issues while on pretrial release. The sentence must "provide maximum opportunity for the rehabilitation of the defendant, and for the protection of the community form further offenses by the defendant and others." Iowa Code § 901.5. "'[I]f a court in determining a sentence uses any improper consideration, resentencing of the defendant is required,' even if it were 'merely a secondary consideration.'" *State v. Lovell*, 857 N.W.2d 241, 243 (Iowa 2014) (quoting *State v. Grandberry*, 619 N.W.2d 399, 401 (Iowa 2000)).

At sentencing, the district court considered the goals of rehabilitation, protection of the community, and deterrence, as well as Holt's age, criminal history, employment, family circumstances, the nature of the offense, Holt's lack of

acceptance of responsibility, and information in the presentence investigation report. Considering all these factors, the court determined,

> I do consider this to be a crime of immense seriousness given the vulnerability of children. You've not accepted any responsibility for the action. The prospects of you being successful on probation are remote at best because in the Sex Offender Treatment Program, one must admit what they've done or there's no therapeutic value to it. And that's not to say that I would give you probation even if you had. I don't know because we aren't there.
>
> But I know this. Until it can be demonstrated that you've been rehabilitated, I don't believe it's safe for you to be in the community. And I believe that the State's recommendation is appropriate.
>
> And I also think that this sentence is important from a deterrence standpoint so that people do understand that when this type of thing happens there are serious consequences.

Having reviewed the record, the district court did not consider any improper factors and did not abuse its discretion in sentencing Holt to a period of incarceration.

**IV. Conclusion.**

For all of the above stated reasons, we affirm Holt's conviction and sentence.

**AFFIRMED.**