# IN THE COURT OF APPEALS OF IOWA

No. 17-1382
Filed February 20, 2019

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**CIERA SHANAE BOLDEN,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Warren County, Mark F. Schlenker,

District Associate Judge.

Ciera Bolden appeals her conviction for one count of second-degree

harassment. **REVERSED AND REMANDED.**

Seth Harrington of Harrington Law LC, Urbandale, for appellant.

Thomas J. Miller, Attorney General, and Genevieve Reinkoester, Assistant

Attorney General, for appellee.

Considered by Potterfield, P.J., Doyle, J., and Scott, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**DOYLE, Judge.**

"I'm going to straight fuck her up!  So tell them that!"  Is this email communication to a third party sufficient to sustain a conviction for second-degree harassment?  That is the question presented in this appeal.  For the reasons that follow, we determine it is not.

**I. Background Facts and Proceedings.**

The facts, briefly stated, are as follows: Ciera Bolden answered an advertisement from three other Simpson College students seeking a fourth roommate for their on-campus apartment.  After meeting with the women and moving into the apartment, a conflict developed between Bolden and Stephanie Woodruff, one of the roommates.  Woodruff contacted Tayler Keitzer, Simpson's area coordinator in residence life who oversaw all the students living in on-campus apartment complexes, about the conflict.

Keitzer asked Bolden to provide a written statement to the college's conduct board concerning the conflict with Woodruff.  Keitzer later emailed Bolden to remind her of the request, stating:

> As I mentioned during the various times that we communicated over the weekend, I would like to have a written statement regarding your perspective of the situations that occurred Thursday night and Saturday afternoon by 8:00am Monday, September 19th.  Any documentation you can provide will be helpful in this situation.

When Bolden did not submit a written statement as requested, Keitzer emailed Bolden again, inviting her to discuss the situation in person with the board:

> I would like to give you an opportunity to meet with myself, Chris Frerichs, and Walter Lain on Wednesday, September 21st at 2:15pm to discuss your situation and allow you a chance to talk to us in person, if you'd like.  This meeting is to allow you the space to

share your side of the situation with us, providing your perspective of each incident. After not receiving your written statement documenting these situations, I want to reiterate how important and helpful it is to receive your side of the situations that have occurred. Walter, Chris and I will make a determination of the solution after meeting with each party.

In a follow-up to that email, Keitzer wrote:

I forgot to mention in my previous email that a decision will still be made even if you choose not to provide documentation of the situation. As a reminder, this documentation can occur either via my previously requested written statement, and/or the opportunity I mentioned to meet with Chris, Walter, and myself on Wednesday, September 21st at 2:15pm. If you have any questions about this process, please let me know!

Bolden replied to Keitzer's emails, stating:

Thank you for your help Taylor. If I can catch Walter today after class I am going to speak with him. Because quite honestly, I don't have the patience for this. I'm very busy and they are succeeding in pissing me off, only because [t]his is all complete bs. I don't feel like I should have to waste any of my time having a formal meeting because Stephanie got put in her place for talking to me in a manner she had no business. I will tell her and anyone else who speaks to me like they have not respect for themselves or me that I will beat their ass or whatever came out because I will not be disrespected or on the receiving end of someone trying to intimidate me because they come from a racist background and can't handle a completely different cultural reaction! I['d] be afraid if I was her too, because if she does the shit again. I can guarantee you, many aren't going to give her ass a warning. I'm going to straight fuck her up! So tell them that!

Keitzer shared the email with Woodruff.

Based on the statements made in Bolden's email to Keitzer, the State charged Bolden with three counts of second-degree harassment, in violation of Iowa Code sections 708.7(1) and 708.7(3) (2016) (one count for each of Bolden's three roommates). Following trial, a jury found Bolden guilty of one count of

second-degree harassment as it pertained to Woodruff but acquitted her on the harassment charges concerning the other roommates.

**II. Scope and Standard of Review.**

Bolden challenges the sufficiency the evidence supporting her conviction. We review her claim for correction of errors at law. *See State v. Benson*, 919 N.W.2d 237, 241 (Iowa 2018). We will uphold the verdict if it is supported by substantial evidence. *See id.* Evidence is substantial if, when viewed in the light most favorable to the State, it could convince a rational factfinder that the defendant is guilty beyond a reasonable doubt. *See id.*

**III. Discussion.**

The jury was instructed that in order to find Bolden guilty of second-degree harassment on the count pertaining to Woodhouse, the State had to prove the following:

> 1. On or about the 2nd day of October, 2016, the defendant . . . communicated with Stephanie Woodruff in writing, without a legitimate purpose, in a manner likely to cause her annoyance or harm.
> 2. The defendant communicated a threat to commit bodily injury.
> 3. The defendant did so with the specific intent to intimidate, annoy, or alarm Stephanie Woodruff.

Bolden argues there is insufficient evidence to support a finding that she communicated with Woodruff in writing because her email was sent to Keitzer, not Woodruff.

This question of whether a communication to a third-party can support a conviction for second-degree harassment was considered by this court in the unpublished case of *State v. Cramer*, No. 09-0957, 2010 WL 2925127, at *4 (Iowa

Ct. App. July 28, 2010). In that case, the defendant sent a letter to his ex-girlfriend in which he referenced her current boyfriend, writing in part, "I'll fuck Tom up. You can tell him that." *Cramer*, 2010 WL 2925127, at *1. This court held the determinative question is "whether the evidence shows the defendant intended to communicate with [the target of the harassment] via the letter, or in other words, whether defendant intended the threats to reach [the target]." *See id.* at *5. It concluded that although the evidence was not overwhelming, the facts of that case were sufficient to support a finding that the defendant did intend the threat to reach his target:

> The letter is addressed to [the ex-girlfriend] and primarily communicates to [the ex-girlfriend]. But there are two places where the defendant's intent to communicate threats to [her current boyfriend] is clear. "I'll fuck Tom up. You can tell him that," shows defendant expected [her current boyfriend] to learn of the threat. This is reinforced later in the letter where defendant briefly addresses [her current boyfriend] directly, not in the third person:
>> Laugh it up Tom. A day of payback will come to you Mr. Thomas Benjamin Mallory 7/14/1952, Ha, Ha, Ha, Ha. You robbed me of 5 1/2 months of my life. You exconvict Des Moines Iowa, peice [sic] of shit. Tom, I swear this upon my death.

*Id.* at *5-6.

Superficially, the facts of the case before us seem similar to those in *Cramer* in that Bolden referenced Woodruff in writing to a third party, stating she would "fuck her up," and indicated she intended that the statement be communicated by telling Keitzer she could tell "them" that. However, the present case is distinguishable from *Cramer* in ways that cast doubt on whether Bolden intended to communicate directly with Woodhouse. Unlike the defendant in *Cramer*, Bolden never addresses Woodruff directly in her email to Keitzer. Additionally, it was clear

in *Cramer* that the "him" the defendant asked his ex-girlfriend to communicate the threat to was the target of the threat. In contrast, Bolden asks Keitzer to communicate her statements to "them"[1] while using the pronoun "her" to refer to Woodruff in the rest of the email. Although it is possible to interpret Bolden's reference to "them" as Bolden's roommates, three factors refute that conclusion.[2]

First, Bolden never refers to any of her roommates besides Woodruff in the email.

---

[1] Although some proscribe against the singular use of the pronoun "them," *see* William Strunk Jr. & E.B. White, *The Elements of Style*, 60 (4th ed. 2000), we note that such usage has been widely recognized, *see, e.g.*, Robert D. Eagleson, *A Singular Use of They*, 5 Scribes J. Legal Writing 87, 87-92 (1994-95). However, the facts before us indicate that Bolden did not intend the singular usage.

[2] Keitzer's testimony indicates that she interpreted "them" to refer to Bolden's three roommates:

> Q. And when you got that email, what was your reaction? A. I honestly didn't know how to take it. I sought out advice from my supervisor, Luke. I thought that it was a statement that we should share with the women involved, the women that this email is referring to, to provide them with this information for their safety.
>
> Q. Why was it an issue for you? A. I think the threat of telling— telling me to tell a group of women that she was going to fuck them up, that was alarming to me, and it's our job to relay this information and keep our students safe and aware of what's going on, so I felt a need to share that information.

In contrast, one of the conduct board members testified that he interpreted Bolden's email as a request to Keitzer to relay her statements to the conduct board:

> Q. Who is "them"? How do you interpret this? A. . . . Ciera was asked to participate in a hearing, and in lieu of participation of her statements in a hearing, that's the way I had interpreted that this conversation was to be taken, that she would—as we are here today, if she was telling her side of the story, this is what she would have said in an open environment.
>
> Q. So she wanted this to go to that hearing? A. That's my understanding.
>
> Q. She wanted Tayler to tell them that this is her position? A. That's my understanding.
>
> Q. Your understanding is not that this was meant for her three roommates? A. I don't believe that it was ever intended to be an actual statement. That's the way I understood it.

The State concedes that "both meanings are plausible" but argues that in the face of conflicting evidence as to whom "them" refers, the question was for the jury to decide. *See State v. Nitcher*, 720 N.W.2d 547, 556 (Iowa 2006) (noting that the jury is free to reject certain evidence and credit other evidence).

Second, the context of the correspondence—a reply to Keitzer's repeated requests for Bolden to make a statement to the conduct board about what occurred— indicates that she was referring to the conduct board. Finally, Bolden sent the email to a school official who was investigating the roommate conflict in her official capacity, and it is doubtful that Bolden would then ask this official to pass along a threat to a third party. For these reasons, the evidence is insufficient to support a finding that Bolden intended to communicate with Woodruff via her email to Keitzer.

Because there is insufficient evidence to support Bolden's conviction, we reverse and remand for entry of a judgment of acquittal. Having found insufficient evidence to support Bolden's conviction, we need not address the claims concerning her sentence.

**REVERSED AND REMANDED.**