# IN THE COURT OF APPEALS OF IOWA

No. 24-0628
Filed July 2, 2025

**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**NERSIUS ADONLIEL ARTISANI,**
      Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Linda M. Fangman, Judge.

A criminal defendant appeals his conviction for willful injury causing bodily injury. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Nan Jennisch (argued), Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Louis S. Sloven (argued), Assistant Attorney General, for appellee.

Heard at oral argument by Schumacher, P.J., and Buller and Sandy, JJ.

**BULLER, Judge.**

Nersius Artisani appeals his conviction for willful injury causing bodily injury flowing from his assault on a fellow detainee in a county jail. Artisani claims the district court erred in a definition in the stand-your-ground jury instructions, though exactly what he thinks the district court should have done is not entirely clear. In comparing the arguments on appeal to a very messy record below, we conclude error was not preserved or was otherwise waived. But, in any event, even preserved error would be harmless given overwhelming evidence of guilt, including a video recording of the attack. We affirm.

## I.      Background Facts and Proceedings

Artisani and Anthony Smith were both detainees in the Black Hawk County Jail in September 2023, housed in a maximum-security pod. Just after arriving in the pod, Smith walked downstairs from his cell to the pod's common area and made a gesture toward Artisani—apparently Smith wanted to see whether Artisani was gossiping about him or willing to talk. According to a jailer who was working that day and later watched surveillance footage, Smith's gesture was not threatening, and the jailer did not see any "pre-fight indicators" between the two detainees.

Artisani—six-feet-four-inches tall and 235 pounds—got up from playing cards with other detainees, walked over, and met the smaller Smith behind the stairs.[1]  They exchanged a few words, and Smith gave Artisani what Smith described as a "mean mug" facial expression. Smith's hands remained at his side,

---

[1] Although the surveillance camera was in front of the stairs, there are no risers between the individual steps, allowing camera coverage behind the stairs.

and Artisani punched him with a closed fist and shoved him—knocking Smith to the ground, apparently unconscious. From the vantage point of the jailer, it appeared Smith was immediately knocked out: "His arms and legs locked out, and he fell backwards, not bracing himself for the fall." Before anyone could intervene, Artisani "stomped on" Smith's head twice, using the bottom of his foot to repeatedly knock Smith's skull into concrete; Smith made no move to protect his head. Surveillance footage depicted Artisani watch Smith fall, step closer to stomp once, then step over Smith to stomp again, and only stop when a jailer put himself between Smith and Artisani.

The jailer told Artisani to go lock down, and Artisani responded "fuck you" but eventually complied after he was told a second time. Smith was not moving on the ground, still unconscious, and "making like a gargling/snoring noise." He was taken to the hospital and treated for a broken nose and concussion. Testing revealed methamphetamine and amphetamines in his system.

Artisani later told a jailer that there was "some sort of beef" between him and Smith, though it was unclear to the jailer whether the beef came from inside or outside the jail. Artisani also said he needed to show the other inmates he wasn't afraid. A jailer moved Artisani to a segregated unit, and Artisani said something like "he knew that he was already in trouble and that he didn't give a fuck."

Artisani testified he had history with Smith from outside the jail. According to Artisani, when he met Smith under the stairs, Artisani's amateur-boxer "instincts" or "intuition" told him Smith "was going to assault" him. So he punched Smith first, striking him in the head. He did not identify in his testimony exactly what Smith

said to him. In Artisani's re-telling, he "doubted the authenticity of [Smith] being maybe that hurt just from one punch" and kicked Smith's head twice because he wanted to "see the fight through"—even though Smith "was semi-conscious" and Artisani "at some point" "realize[d] he's not responding anymore." He denied any intent to seriously injure Smith and vaguely referred to feeling afraid, though he didn't explain why. And he bickered with the assistant county attorney over whether he "kicked" or "stomped" on Smith, explaining that he didn't want to say "stomping" because it "could mean more culpability than kicking." But he ultimately conceded "someone might view it as a stomp."

Artisani claimed that he did not want to ask the jailer for protection because he thought he could stand his ground. He explained his theory of defense from the stand, using words right out of the jury instructions: "The Iowa law, as I understand it, states you don't have to retreat. You don't have to call law enforcement. You don't have to try to get away or escape. I was legally present. He was threatening me, and I used force to eliminate the threat." He testified that he believed the force used was "reasonable."

The parties stipulated that Smith's injuries were a "bodily injury" under Iowa law. And both the jailer (who was trained as an emergency medical technician by the military) and the treating emergency room physician testified that Artisani stomping on Smith's head could have or would have caused a serious injury if it continued.

The jury found Artisani guilty as charged of willful injury causing bodily injury, a class "D" felony in violation of Iowa Code section 708.4(2) (2023). The court sentenced Artisani to prison for fifteen years, enhancing the sentence as a

habitual offender under section 902.9 following Artisani's stipulation to prior convictions. Artisani appeals, raising only an issue relating to the stand-your-ground jury instructions.

## II. Error Preservation/Waiver

The record on the stand-your-ground instruction is a mess. The State's appellate brief calls it a "real head-scratcher" as to whether error is preserved, while Artisani's opening brief cites an eight-page range of transcript to baldly claim error was preserved without elaboration and his reply brief offers no responsive argument on preservation.

Our review reveals that, during an off-the-record jury-instruction conference, the defense at some point requested a version of model jury instruction 400.2—also known as the stand-your-ground instruction—"A person who is not engaged in illegal activity has no duty to retreat from any place where the person is lawfully present before using force as described in these instructions." Apparently also during an off-the-record conversation, the parties discussed adding to already-partially-included model instruction 400.3 that force was not justified if "the defendant was engaged in illegal activity." The court agreed and determined the related "blank" spot for defining the illegal activity would be filled in with "assault"—though it was unclear whether this was in reference to "the initial assault" or what the defense described as "subsequent actions by the defendant after the initial punch and the kicking and whether . . . those activities were the illegal activities that then rendered the defense no longer available." The defense then said that, "in light of that ruling" (apparently referencing an

off-the-record discussion), Artisani withdrew his request for the stand-your-ground instruction.

The court, understandably confused by what—if anything—Artisani was requesting, attempted to clarify the defense's position. The court noted it had not included model instruction 400.2 in its initial packet of instructions because none of the court's instructions suggested Artisani had to take an alternative course of action, none suggested he had any duty to retreat, and factually "there was no evidence that he had anywhere to retreat to" since he was "in jail in the maximum security pod." So, in the court's words, "it did not initially include 400.2" because it wasn't necessary, "but the defense said they wanted it anyway." The court then informed the defense that, if the court gave instruction 400.2, it was required to give instruction 400.3(4) to define the illegal activity for "engaged in illegal activity." In other words, the court found 400.3(4) and its corresponding "illegal activity" definition instruction "must" be given if 400.2 was or else the jury would be left to speculate about what "illegal activity" means. The court went on to emphasize that there were "multiple facts [and] multiple theories" of multiple assaults—and the undisputed facts were essentially that Artisani "punched Mr. Smith; and then when he was down on the ground unconscious, he stomped on his head twice." This, the court explained, meant "[t]he jury could find that [Artisani] was engaged in assault and that the stomping was not justified."

The record on the instructional issue ended with this exchange:

> THE COURT: The Court is still willing to give both of those instructions [400.2 with the stand-your-ground proposition and 400.3(4) defining "illegal activity"]. But the Court understands that the defense is now asking that neither instruction be given. Is that correct, [defense counsel]?

[DEFENSE]: If I may, Your Honor.

THE COURT: I really just asked if that was correct. You're still asking not to have it included?

[DEFENSE]: I'm not on cross-examination here. I want to create a record. And my record is: As you said, the assault has to come in, and that's why we don't want it. Because we feel that this is more of like someone committing a robbery and then they use self-defense. That's the record I wanted to make. We were placed in a position to make a decision, and we made a decision.

THE COURT: And my question was: Is it still your decision right now to withdraw your request? And I would ask that you have your tone and your demeanor respectful when addressing the Court.

[DEFENSE]: Yes, Your Honor.

THE COURT: All I wanted to know was, is it still your position that you did not want it?

[DEFENSE]: Under duress, yes.

THE COURT: There's no such thing as under duress. I'll put them both in. Do you want them both in?

[DEFENSE]: We've made our record, Your Honor. I've answered your question. We've created a record.

THE COURT: [Asking for the State's position].

[STATE]: Your Honor, I think it's problematic when counsel says that it's "under duress." There is no duress here. It is a free-will decision. You can—I have no objection to either avenue. And you [talking to defense counsel] get to make that decision. You don't get to sit there and say that it's under some sort of duress or against the will. So I would just ask that if you want it in that you please request it in. The State has no objection to either alternative. But to characterize it on the record as under duress is inappropriate.

THE COURT: I mean, frankly, at this point I'm thinking about just putting them both in then because now you've made the record that somehow the Court is forcing you not to have an instruction. So the better bet is just to have the instruction. It's a correct statement of the law, and there's no risk if there's a correct statement of the law.

[DEFENSE]: We disagree with that as well, Your Honor, if you include the illegal activity as the assault. And that is the situation where we're in where we have to make a choice.

THE COURT: So in 400.2 the language is a person who is not engaged in illegal activity. How would I define that then for the jury? Because the instruction requires a definition of illegal activity.

[DEFENSE]: Okay. Is there a definition instruction on illegal activity?

THE COURT: No. The comment says to refer to the marshalling instruction.

[DEFENSE]: But you want me to come up with an illegal activity. There's been no evidence of an illegal activity that he was

doing. The very illegal activity that we are here for is what you're saying is the illegal activity.

THE COURT: But you would acknowledge that there were different acts done with a break in time.

[DEFENSE]: There were different acts and a break in time.

THE COURT: Yes. Frankly, the Court is just concerned of the record counsel made, so I'm just going to put both of them in.

As a broad observation, we understand the district court's frustration with defense counsel refusing to take a position and attempting to have his cake and eat it too with the instruction. And we recognize that, in reading the cold transcript, we cannot hear the tone counsel used in addressing the court, which apparently warranted a rebuke. In any event, by repeatedly refusing to answer the court's question about whether he wanted the instructions at issue, we find Artisani placed the district court in the impossible position of being whipsawed no matter which way it went. *See DeVoss v. State*, 648 N.W.2d 56, 60–63 (Iowa 2002) (on principles underlying the error-preservation rules, including "protect[ing] the district court from being ambushed by parties raising issues on appeal that were not raised in the district court"). Even on appeal, Artisani does not really explain how he thinks the jury should have been instructed or where he preserved that error below.[2] For example, he did not offer below and does not offer on appeal any alternative language to define "illegal activity." We conclude Artisani failed to preserve error or otherwise waived his claim.

---

[2] At one point in his new-trial motions below, Artisani indicated the jury should have been asked to answer a special interrogatory. To the extent Artisani reprises that claim on appeal, we conclude it was waived or not preserved because he did not timely request an interrogatory before submission to the jury. And to the extent Artisani argues that *State v. Johnson*, 7 N.W.3d 504 (Iowa 2024), provides a basis for reversal, that decision came after he was tried, and we do not believe he preserved the same error Johnson did given the record made below.

### III.     Standard of Review

We review preserved jury-instruction claims for correction of errors at law. *See State v. Benson*, 919 N.W.2d 237, 241 (Iowa 2018).

### IV.     Discussion

Although we could end this opinion with our error-preservation and waiver analysis, the record is so muddled we opt to go further for completeness. In its brief, the State urges the easiest way to dispose of this appeal is to consider whether any error arising out of that jury-instruction exchange was harmless. So we consider that question first. And we conclude any error was harmless.

This was not a stand-your-ground case at trial. As the case was tried and argued, the fighting issue was not whether Artisani had a duty to retreat—instead the case turned on whether Artisani reasonably believed the use of force was necessary in the first place and whether he used reasonable force. Put differently, if the jury found either the use or quantum of force used were unreasonable, it did not reach the stand-your-ground question, and the legal issues related to that instruction was immaterial. *See State v. Howard*, 14 N.W.3d 763, 767–68 (Iowa Ct. App. 2024) (summarizing the law on justification, including the use of reasonable force); Iowa Code § 704.1 (the statutory definition of the defense); *cf. State v. Thompson*, 836 N.W.2d 470, 478 (Iowa 2013) ("[W]ords alone, historically, have been insufficient to provide a factual basis for serious provocation.").

After a careful review of the record, we conclude there was overwhelming evidence that Artisani's use of force for *at least* one of the two head-stomps was not reasonably necessary to defend himself nor was the amount of force he used reasonable under the circumstances. We can draw this conclusion even if we

assume the jury fully credited Artisani's testimony—that he punched Smith, knocked him into semi-consciousness, and then stomped on him twice based on his intuition. That's because the video tells the same tale: the unprovoked sucker-punch knocked Smith out and/or to the ground, then he lied there unmoving while Artisani repeatedly stomped on his head. On these essentially undisputed facts, no reasonable juror would have found the force used for the final head-stomp was reasonable. At that point, even in Artisani's telling, he faced no imminent threat from Smith. And even if he did face a threat, stomping on Smith's head was far in excess of the amount of force reasonably required to disable an unconscious or semi-conscious opponent who lay unmoving on the ground.

Consistent with other stand-your-ground cases in which evidence of the defendant's guilt was overwhelming, we find any error in the instructions harmless. *Cf. State v. Gibbs*, 941 N.W.2d 888, 900 (Iowa 2020) ("After careful review of the record, we find the error harmless beyond a reasonable doubt. The evidence of guilt was overwhelming. This was the rare murder case where the murder was captured on video."); *State v. Lorenzo Baltazar*, 935 N.W.2d 862, 872 (Iowa 2019) ("Evidence of Baltazar's guilt was overwhelming, disproving any theory of his justification."). No juror who watched the video recording would have seriously considered the entire course of the assault justified. And therefore Artisani is owed no relief even if he had preserved his instructional challenge and regardless of whether the error was constitutional or non-constitutional in dimension.[3]

**AFFIRMED.**

---

[3] We do not wade into the lurking question of whether the error at issue, had it been preserved, warrants a constitutional-error prejudice analysis.