# IN THE COURT OF APPEALS OF IOWA

―――――――――

No. 25-0553
Filed April 29, 2026

―――――――――

**State of Iowa,**
Plaintiff–Appellee,
v.
**Sebastin Reece O'Brien,**
Defendant–Appellant.

―――――――――

Appeal from the Iowa District Court for Harrison County,
The Honorable Jeffrey L. Larson, Judge.

―――――――――

**AFFIRMED**

―――――――――

Martha J. Lucey, State Appellate Defender, and Melinda J. Nye, Assistant
Appellate Defender, attorneys for appellant.

Brenna Bird, Attorney General, and Louis S. Sloven, Assistant Attorney
General, attorneys for appellee.

―――――――――

Considered without oral argument
by Tabor, C.J., and Badding and Langholz, JJ.
Opinion by Tabor, C.J.

**TABOR, Chief Judge.**

Iowa's uniform jury instructions advise district courts to rework the standard marshaling instructions if the jury is considering an insanity defense.[1] Because the district court declined his counsel's request to modify the marshaling instructions to cross reference his insanity defense, Sebastin O'Brien challenges the jury's verdict finding him guilty of murder in the first degree. Although the court did not follow a recommended practice for instructing the jury, O'Brien cannot show that he suffered prejudice on this record. Thus, we decline to grant a new trial.

## I.  Facts and Prior Proceedings

A passing motorcylist stopped to help when he saw a speeding pickup miss a curve, skid into the ditch, and flip onto its top. When O'Brien climbed out of the wreckage, the motorcylist noticed blood splatter on his face and clothes. He assumed O'Brien was hurt in the accident. But it was not O'Brien's blood. The blood—and the crashed pickup—belonged to Douglas Manley.

When the motorcylist refused to give the agitated man a ride into Modale, the nearest town, O'Brien started walking. Another passing motorist, also seeing that O'Brien had "blood all over himself" pulled over. O'Brien jumped into that truck and demanded, "Get me out of here." The

---

[1] A comment to Iowa Criminal Jury Instruction 200.9 (insanity defense) states: "Caveat: If the insanity defense is submitted, then the marshaling instruction should be modified accordingly." *See* Iowa State Bar Ass'n, Iowa Crim. Jury Instruction 200.9 cmt.; *cf. State v. Hines*, No. 09-0241, 2010 WL 446954, at *3 n.1 (Iowa Ct. App. Feb. 10, 2010) (noting "it would have been appropriate and perhaps preferable to explicitly refer to the submissible justification defense within the marshaling instruction" and comparing justification to insanity defense).

motorist acknowledged the blood on O'Brien and asked if he needed medical help. O'Brien looked him in the eye and said: "It's not my blood." O'Brien refused to leave the truck, so the driver reached for his pistol and used it to strike O'Brien in the mouth. The pair struggled over the gun, with O'Brien eventually giving up and walking back toward the crash site. The motorist went home and called 911.

When Harrison County Sheriff's deputies found O'Brien in the town of Modale he was "agitated" and "combative."[2] As they tried to place him in a patrol car, O'Brien called himself "a wanted murderer." O'Brien then started talking about "Doug," saying that he was "bleeding out" and asking the deputies to "please go save him." At first, the deputies thought someone else was in the crashed truck. But O'Brien clarified that he was talking about Manley who lived in a house "south of town." O'Brien called Manley "a fucking pedophile" and admitted that he took Manley's truck after "beat[ing] the fuck out of him."

Emergency personnel took O'Brien to the hospital because of possible trauma from the rollover accident and because his mouth was bleeding from the scuffle with the other motorist. An emergency room doctor testified that he did not see any signs that O'Brien was suffering from a psychotic episode.

Meanwhile, the deputies learned that the crashed truck was registered to Manley and rushed to his house. They found his body amid a bloody crime scene. Manley had been beaten with such force that his face was unrecognizeable. O'Brien later told his mother that he struck Manley with

---

[2] Many people who interacted with O'Brien before his arrest noticed signs of intoxication including the smell of alcoholic beverages, slurred speech, bloodshot eyes, and impaired balance. A sample taken at the hospital showed a blood alcohol content of .099.

pieces of wood and stomped on his face. O'Brien's blows knocked out several of Manley's teeth, four of which he swallowed before he died, according to the autopsy.

In a series of recorded calls from the jail, O'Brien gave varying versions of what happened at Manley's house. In one call, he acknowledged that he was "probably going down hard" for what he did.

Indeed, the State charged O'Brien with murder in the first degree in violation of Iowa Code section 707.1 and 707.2(1)(a) (2024). O'Brien told the court that he would be relying on the defenses of insanity, diminished responsibility, intoxication, and self-defense.

For the insanity defense, O'Brien lined up Dr. Christina Pietz as his expert witness, and she completed an evaluation of O'Brien. She chronicled for the jury O'Brien's history of psychiatric treatment, including a brief hospitalization in February 2022 when he was having auditory and visual hallucinations. Later that same year, he was hospitalized for six months and diagnosed with psychosis. Records also show previous diagnoses of paranoid schizophrenia and bipolar disorder. Dr. Pietz believed that when O'Brien killed Manley he was acting under the delusion that Manley had raped him and sexually trafficked children. As her bottom line, she offered her opinion that O'Brien suffered from a schizoaffective disorder, leaving "him incapable of knowing the quality and nature of his actions" and unable to distinguish right from wrong.

To rebut Dr. Pietz's opinion, the State called Dr. Rosanna Jones-Thurman, who also examined O'Brien and reviewed the evidence. In her view, O'Brien "understood the nature and quality" of his actions and had no condition that rendered him insane at the time of the murder. From

conducting inventory tests, she found that O'Brien was "malingering symptoms." In other words, he was "exaggerating" by giving answers that would make him "look psychotic."

The jury rejected his insanity defense and convicted O'Brien of murder in the first degree. He appeals.

## II.     Scope and Standard of Review

We review jury instruction challenges for the correction of legal error. *State v. Kraai*, 969 N.W.2d 487, 490 (Iowa 2022). We consider the entire set of instructions to decide whether they accurately conveyed the law to the jurors. *Id.* While they should generally track the uniform instructions, district courts are not bound by any model in formulating their directions to the jury. *State v. Davis*, 975 N.W.2d 1, 9–10 (Iowa 2022); *see also State v. Ellison*, 985 N.W.2d 473, 479 (Iowa 2023). We will reverse only when the instructions resulted in prejudice by misleading the jury or materially misstating the law. *State v. Benson*, 919 N.W.2d 237, 241–42 (Iowa 2018).

## III.     Analysis

To avoid responsibility for the brutal murder, O'Brien pursued an insanity defense. His lawyer told jurors in opening statements: "It was clearly a delusional attack that took the life of Douglas Manley." When it came time to finalize the jury instructions, O'Brien asked to modify all the marshaling instructions to cross reference the instructions defining legal insanity. For the top charge, O'Brien proposed telling the jury: "If the State has proved all the elements, the defendant is guilty of murder in the first degree. You must then consider the defense of insanity as described in Instruction Number . . . ." O'Brien also asked for a similar sentence to be included for all the lesser included offenses being marshalled.

The State resisted the request, contending that separating the marshaling instructions from the affirmative defense instructions would make "more sense to a jury." The prosecutor argued that the separation would "make it much easier for the parties to clarify for the Court whose burden [it] is to prove each one of these elements. And since it's their burden to prove insanity, it's better to separate it out." The district court agreed with the State and denied O'Brien's request to alter the marshaling instructions.

On appeal, O'Brien argues that the district court erred in refusing to include the suggested language and that we should presume prejudice. For this argument, O'Brien cites *State v. Davis*, 951 N.W.2d 8, 16 (Iowa 2020).

But *Davis* doesn't support his position. That case involved a claim that counsel was ineffective for not objecting to the marshaling instruction for first-degree murder because it did not mention the insanity defense, while the marshaling instructions for the lesser-included offenses did. *Id.* at 20. Our supreme court reasoned: "When the marshaling instructions for the other nine offenses cross-referenced the insanity defense but not the instruction for first-degree murder, the jurors would reasonably conclude that omission was intentional and the defense was unavailable." *Id.* at 19 n.1. By contrast, the maxim that the "expression of one thing is the exclusion of another" is not at play here. *See Davis*, 951 N.W.2d at 19 n.1; *see also Vagts v. N. Nat. Gas Co.*, 8 N.W.3d 501, 516 (Iowa 2024) (translating the Latin phrase "expressio unius est exclusio alterius"). None of the marshaling instructions for O'Brien's trial cross-referenced his insanity defense. So the question is whether the district court erred in rejecting O'Brien's request to modify *all* the marshaling instructions.

We decline to find that the district court erred by not following the comment from the uniform instructions. To be clear, we value the work of

the Iowa State Bar Association members on that advisory committee. *See State v. Robinson*, 859 N.W.2d 464, 490 (Iowa 2015) (Wiggins, J., specially concurring) (recognizing that "the ISBA committee appointed to formulate these instructions is industrious and does its best to get the law right"). And it's true that "we generally prefer the uniform instructions be followed by trial courts." *State v. Holtz*, 548 N.W.2d 162, 164 (Iowa Ct. App. 1996). But despite our broad endorsement of the uniform instructions, courts cannot "delegate the formulation of the law to the instruction committee." *Robinson*, 859 N.W.2d at 490. And beyond that, the *Davis* court did not endorse the concept of modifying the marshaling instructions to cross-reference the insanity defense in *every* case. In our review of O'Brien's prosecution, we find that the instructions accurately stated the law and were not misleading. *See Ellison*, 985 N.W.2d at 479 ("[T]he court must merely give instructions that fairly state the law as applied to the facts of the case." (citation omitted)).

And even if it would have been preferable to cross-reference the insanity defense in the marshaling instructions, this record leaves no question that the jurors had ample notice that the defense was an option. True, in closing argument, the prosecutor said: "The State submits to you you will go no farther than the first count, the first charge of murder in the first degree. You will be firmly convinced and are firmly convinced after hearing all the evidence." But that was not the end of the story.

In its closing, the defense highlighted the three jury instructions—numbered 45, 46, and 47—discussing O'Brien's insanity defense. Defense counsel quoted Instruction 46: "Insanity need not exist for any specific length of time before or after the commission of the offense." Counsel also reminded the jury of his client's "long history of delusions, hallucinations

7

both auditory and visual, schizophrenia, schizoaffective disorder, [and] bipolar." And counsel pointed to the testimony of the defense expert:

> Dr. Pietz testified to you within a reasonable degree of psychological certainty that on April 21st, 2024, Sebastin O'Brien suffered from a diseased or deranged condition of the mind as to render him incapable of knowing the quality and nature of his actions and was incapable of distinguishing between right and wrong. That was her opinion as a doctor and as a psychologist.

> She also testified within a reasonable degree of psychological certainty that Mr. O'Brien was actively psychotic on April 21st, 2024, and was incapable of knowing the difference between right and wrong as he was assaulting Douglas Manley which ultimately resulted in Douglas Manley's death.

Defense counsel then tried to discredit the testimony of the State's expert, Dr. Jones-Thurman. Counsel capped that part of his argument by saying that Dr. Pietz's opinion "conforms nearly identically with Jury Instructions 45, 46, and 47."

The jurors also heard the State discuss that defense in its rebuttal closing argument: "Let's talk about legal insanity, because I think it's important that we have a clear understanding of what it is and what it is not and whose burden it is in this case." The prosecutor explained that it was O'Brien's burden to prove that he was insane. And added: "I submit to you that based on this evidence that's been presented in this courtroom, we not only proved each and every element beyond a reasonable doubt, but we disproved beyond a reasonable doubt that he was insane at the time."

Given the robust back-and-forth discussion on the insanity defense in closing arguments, no juror could reasonably conclude that the insanity defense was unavailable to O'Brien. This case is unlike *Davis*. Because the instructions were accurate statements of the law and did not distort the

options before the jury, they were not prejudicial to O'Brien. Thus, we decline to order a new trial.

**AFFIRMED.**