# In the Iowa Supreme Court

No. 24–0409

Submitted December 16, 2025—Filed February 27, 2026

**State of Iowa,**

Appellee,

vs.

**Rodney Dee Brown,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Clinton County, Kimberly K. Shepherd, district associate judge.

The defendant challenges the jury instructions and sufficiency of the evidence. **Decision of Court of Appeals and District Court Judgment Affirmed.**

Christensen, C.J., delivered the opinion of the court, in which all justices joined. Mansfield, J., filed a concurring opinion, in which McDermott, J., joined.

Martha J. Lucey, State Appellate Defender, and Nan Jennisch (argued), Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Louis S. Sloven (argued), Assistant Attorney General, for appellee.

**Christensen, Chief Justice.**

A thirteen-year-old girl went to a neighborhood supermarket on an errand for her father. She left frightened, shaking and in tears—after a stranger followed her through the store, approached her repeatedly, and then offered her a ride as she fled across the parking lot. A jury found that conduct amounted to an attempt to entice a minor under Iowa Code section 710.10(4) (2023). Brown appealed, challenging the jury instructions and the sufficiency of the evidence. The court of appeals affirmed the decision of the district court. We accepted Brown's application for further review, and we now affirm the decision of the court of appeals.

**I. Facts.**

On April 8, 2023, Diya (pseudonym), a thirteen-year-old girl, went to a supermarket to purchase cleaning supplies for her father. While at the supermarket, Diya noticed a seventy-one-year-old man, later identified as defendant Rodney Dee Brown, staring at her and "looking at [her] up and down." Diya later noticed Brown following her throughout the store as she looked for the cleaning supplies. As she found the right aisle, Brown approached her and attempted to ask her about her day. As Diya went to check out, Brown continued to follow her and appeared next to her in the checkout lane. This prompted Diya to abandon the checkout lane and wander around the store in an apparent attempt to get away from Brown.

After attempting to distance herself from Brown, Diya attempted to check out again. Once again, Brown appeared next to her and attempted to engage her in conversation, this time asking her for her name, which Diya provided. Diya abandoned the checkout lane again, but this time FaceTimed her mom, who told her to check out immediately and leave the store. Diya returned to the checkout

lane a third time and was able to pay for the cleaning supplies without further interruption. Still on FaceTime with her mom, Diya left the store, shaking and in tears.

Brown then spotted Diya in the parking lot and pulled his car around next to her, asking her if she needed a ride. Diya said, "No," shook her head, and recited Brown's license plate number to her mother (who is employed as an emergency dispatcher) over the still-ongoing FaceTime call. Following her mother's ensuing instructions, Diya ran home. Brown drove off in the same direction Diya ran.

A license plate search connected Brown's vehicle with his residence, and Officer Guarascio went to the residence and made contact with Brown. When asked about the incident, Brown admitted to the interaction with Diya, but insisted that she had approached him. Brown described her as a "pretty young girl." He said that he "thought she was eighteen" and that "some older petite ladies look young." During this back-and-forth, Brown admitted that his conduct would be inappropriate if Diya were thirteen, but said, "[A] guy don't know." Shortly afterward, Brown was indicted for soliciting a minor in violation of Iowa Code section 710.10(4).

The matter proceeded to jury trial. The State presented Diya's testimony and played bodycam footage of Brown's statements to police. Brown's defense at trial centered on whether the State had proven beyond a reasonable doubt Brown's intent to commit an illegal act upon Diya. Brown did not testify.

Prior to closing argument, Brown objected to Jury Instruction No. 12. This instruction reads, in its entirety:

> The State must prove all the elements of Enticing a Minor:
>
> 1. On or about the 8th day of April, 2023, in Clinton County, Iowa, the Defendant attempted to entice the alleged victim.

2. The Defendant did so with the specific intent to commit an illegal act upon the alleged victim.

3. The Defendant committed an overt act evidencing his purpose to entice the alleged victim.

4. At the time the Defendant attempted to entice [the] alleged victim she was either:

a. a minor under the age of sixteen; or

b. the [D]efendant reasonably believed the alleged victim was under sixteen years of age.

If the State has proved all of the elements, the defendant is guilty of Enticing a Minor. If the State has failed to prove any of these elements, the Defendant is not guilty.

Brown objected on the basis that the phrase "an illegal act" is overly broad and requested that the court "actually specify what crime Mr. Brown is supposed to have had the intent to entice this minor for." The district court denied this request, reasoning that further instruction would be contrary to the legislature's intent.

The jury returned a verdict of guilty. On appeal, Brown challenges the propriety of the jury instructions and the sufficiency of the evidence supporting his conviction. We transferred the case to the court of appeals, which affirmed Brown's conviction. On further review, we affirm the decision of the court of appeals and the district court judgment.

**II. Analysis.**

**A. Jury Instruction No. 12.** "[W]e generally review a district court's refusal to give a requested jury instruction for errors at law; however, if the jury instruction is not required but discretionary, we review for an abuse of discretion." *State v. Davis*, 975 N.W.2d 1, 8 (Iowa 2022) (alteration in original) (quoting *State v. Bynum*, 937 N.W.2d 319, 324 (Iowa 2020)). "[W]e consider the jury instructions as a whole rather than in isolation to determine whether they

correctly state the law." *Id.* (alteration in original) (quoting *State v. Benson*, 919 N.W.2d 237, 242 (Iowa 2018)). Brown contends that the district court was required to provide additional instruction on the meaning of "illegal act" under Iowa Code section 710.10(4). Accordingly, we review for correction of errors at law.

Brown was convicted under section 710.10(4). This statute reads, "A person commits an aggravated misdemeanor when, without authority and with the intent to commit an illegal act upon a minor under the age of sixteen, the person attempts to entice a person reasonably believed to be under the age of sixteen." *Id.* The statute concludes with, "A person convicted under this subsection shall not be subject to the registration requirements under chapter 692A unless the finder of fact determines that the illegal act was sexually motivated." *Id.* This appeal centers on whether the court was required to instruct the jury that an "illegal act" must mean an "illegal sexual act."[1]

Jury Instruction No. 12 followed the language of the uniform instructions for enticing a minor distributed by The Iowa State Bar Association. "[T]rial courts should generally adhere to the uniform instructions." *State v. Becker*, 818 N.W.2d 135, 143 (Iowa 2012) (quoting *State v. Mitchell*, 568 N.W.2d 493, 501 (Iowa 1997), *overruled on other grounds by, Alcala v. Marriott Int'l, Inc.*,

---

[1]On appeal, Brown challenges the jury instructions as being insufficient because they misstated the law by not narrowing the definition of "illegal act" to "illegal sexual act." At oral argument, Brown changed his position and presented a different, broader, challenge to the jury instructions. Generally, "we do not decide or consider arguments raised for the first time during oral argument." *State v. Warren*, 955 N.W.2d 848, 860 (Iowa 2021); *see also Martins v. Dull* (*In re Est. of Dull*), 303 N.W.2d 402, 407 (Iowa 1981) ("The scope of appellate review is defined by the issues raised by the parties' briefs . . . ."), *superseded on other grounds by court rule*, Iowa R. Civ. P. 1.421(1), *as recognized in*, *Antolik v. McMahon*, 744 N.W.2d 82 (Iowa 2007). Moreover, even at oral argument, Brown offered no legal basis for why the district court was required to further define the term "illegal act" in its jury instructions. We decline to provide one ourselves. *See Clark v. Sweeney*, 607 U.S. 7, 9 (2025) (per curium) ("[C]ourts 'call balls and strikes'; they don't get a turn at bat." (quoting *Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721, 1724 (2020))).

880 N.W.2d 699 (Iowa 2016)). "[W]e normally approve the submission of uniform instructions," but we may conclude a "particular instruction is faulty." *State v. McMullin*, 421 N.W.2d 517, 518 (Iowa 1988).

Brown argues that the jury instructions misstated the law because they failed to provide an instruction that would clarify that the "illegal act" had to be an "illegal sex act" under section 710.10(4). This is an incorrect statement of law.[2] A defendant charged with enticing a minor under section 710.10(4) need not intend to commit an illegal sex act. The legislature carved out a specific provision in the statute for when the offense is sexually motivated. Iowa Code § 710.10(4) ("A person convicted under this subsection shall not be subject to the registration requirements under chapter 692A unless the finder of fact determines that the illegal act was sexually motivated."). A different statute criminalizes enticement with intent to commit an illegal sex act. *See id.* § 710.10(2).

**B. Sufficiency of the Evidence.** Under Iowa Code section 710.10(4), a defendant is guilty of an aggravated misdemeanor when "without authority and with the intent to commit an illegal act upon a minor under the age of sixteen, the person attempts to entice a person reasonably believed to be under the age of sixteen." Brown challenges the sufficiency of the evidence of his specific intent to commit an illegal act at the time of enticement. Here, the act of enticement occurred when he attempted to entice Diya into getting into his vehicle outside the supermarket. Because there was sufficient evidence of Brown's intent to commit an illegal act, we affirm the decision of the court of appeals.

We review Brown's challenge to the sufficiency of the evidence for correction of errors at law. *State v. Crawford*, 972 N.W.2d 189, 195 (2020). "In

---

[2]Brown conceded this point at oral argument.

conducting that review, we are highly deferential to the jury's verdict." *Id.* at 202. "The jury's verdict binds this court if the verdict is supported by substantial evidence." *Id.* (citing *State v. Tipton*, 897 N.W.2d 653, 692 (Iowa 2017)). "Substantial evidence is evidence sufficient to convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *Id.* "We view the evidence in the light most favorable to the State 'including legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence.' " *Tipton*, 897 N.W.2d at 692 (quoting *State v. Williams*, 695 N.W.2d 23, 27 (Iowa 2005)).

Brown argues there was insufficient evidence of his specific intent. " '[S]pecific intent is seldom capable of direct proof' and is often 'shown by circumstantial evidence and the reasonable inferences drawn from that evidence.' " *State v. Manning*, 26 N.W.3d 385, 394 (Iowa 2025) (quoting *State v. Ernst*, 954 N.W.2d 50, 55 (Iowa 2021)). "[A defendant] will generally not admit later to having the intention which the crime requires . . . his thoughts must be gathered from his words (if any) and actions in light of surrounding circumstances." *State v. Radeke*, 444 N.W.2d 476, 478–79 (Iowa 1989) (alteration omission in original) (quoting Wayne R. La Fave & Austin W. Scott, Jr., *Criminal Law* § 3.5(f), at 226 (2d ed. 1986)).

Brown's course of conduct leading up to the act of enticement, as well as his statements to police in its aftermath, provide sufficient evidence to support his conviction. Diya's unrebutted testimony showed Brown followed her around the supermarket while "looking at [her] up and down," and continued despite her obvious and persistent attempts to avoid him. Brown repeatedly tried to strike up a conversation with Diya. He approached her twice, once asking her about her day, and again to ask for her name.

While Brown did not testify at trial, the police bodycam footage of his statements with Officer Guarascio was played for the jury. In the recording, Brown's account of the incident was that he was "standing still" and Diya approached him. This was in direct contradiction with Diya's testimony at trial. Brown also told the officer he thought Diya, a thirteen-year-old girl, looked "eighteen" and said that "some older petite ladies look young." Brown admitted his interactions with Diya would be inappropriate if she were not eighteen. At trial, Brown's attorney argued that Brown's actions were those of "an adult offering help to a child," yet he never asked Diya if she needed help.

Reasonable inferences taken from Diya's testimony and Brown's recorded statements support the jury's conclusion that he had offered Diya a ride with the intent of committing an illegal act upon her.[3] The jury was best situated to determine the credibility of Diya's testimony as well as the credibility of Brown's recorded statements, and the weight they should be accorded. Interpreting the evidence in the light most favorable to the jury verdict and the State, the jury had sufficient evidence of specific intent to convict Brown under Iowa Code section 710.10(4).

**III. Conclusion**

For these reasons, we affirm the decision of the court of appeals and the district court judgment.

**Decision of Court of Appeals and District Court Judgment Affirmed.**

All justices join this opinion. Mansfield, J., files a concurring opinion, in which McDermott, J., joins.

---

[3]The facts presented to the jury support a reasonable inference of Brown's intent to commit an illegal act such as assault (Iowa Code section 708.1), kidnapping (Iowa Code section 710.1), or stalking (Iowa Code section 708.11).

**Mansfield, Justice (concurring).**

"Sometimes a fella got to sift the law." John Steinbeck, *The Grapes of Wrath* 140 (Penguin Books 2006) (1939).

I join the court's opinion. However, I write separately to express my misgivings with the marshaling instruction given at trial. Normally, we don't ask—or even allow—jurors to "sift the law." That's the judge's job. But the marshaling instruction told the jury to do just that.

**I. The Defective Marshaling Instruction.**

There was no dispute that the defendant had approached Diya in the store and then pulled up to her in the parking lot and offered her a ride home. The defendant admitted as much when interviewed by police. The fighting issue in the case was whether the defendant acted "with the intent to commit an illegal act upon [Diya]." Iowa Code § 710.10(4) (2023). Yet the jury instructions didn't define "illegal act"; they didn't require the prosecution to land on a specific illegal act or acts that the defendant allegedly intended to commit. Instead, they invited the jury to become armchair attorneys and to speculate as to what is and isn't illegal. In the prosecutor's framing of the case at closing argument, all the jury had to decide was whether the defendant was "a good samaritan" or "up to no good."

The marshaling instruction stated,

> The State must prove all the elements of Enticing a Minor:
>
> 1. On or about the 8th day of April, 2023, in Clinton County, Iowa, the Defendant attempted to entice the alleged victim.
>
> 2. *The Defendant did so with the specific intent to commit an illegal act upon the alleged victim.*
>
> 3. The Defendant committed an overt act evidencing his purpose to entice the alleged victim.

4. At the time the Defendant attempted to entice [the] alleged victim she was either:

a. a minor under the age of sixteen; or

b. the defendant reasonably believed [the minor] was under sixteen years of age.

If the State has proved all of the elements, the defendant is guilty of Enticing a Minor. If the State has failed to prove any of these elements, the Defendant is not guilty.

(Emphasis added.) Again, the case hinged on whether the State had proved element number two.[4]

## II. Trial Counsel's Objection to the Instruction.

The defendant made a timely objection to the marshaling instruction on the ground that the illegal act should be defined for the jury. As defense counsel explained,

Your Honor, I am objecting on Instruction No. 12, specifically on paragraph 2 of that that states, "The defendant did so with specific intent to commit an illegal act upon the alleged victim."

The State has not offered any theory as to what that illegal act is or could be, Your Honor. I think that the term "to commit an illegal act" is overly broad and overly -- it's too vague for a jury. They might -- The jury might be under the impression that giving a ride to a stranger is itself a crime. They might think that it might be a crime that Mr. Brown is operating a -- some sort of unlicensed taxicab company or something of that nature. An illegal act could cover both anything criminal, it could even cover anything civil.

I just think that the word -- that phrase "an illegal act" is overly broad. I am requesting the Court to actually specify what crime Mr. Brown is supposed to have had the intent to entice this minor for.

---

[4]The instruction was based on Iowa State Bar Association, Iowa Criminal Jury Instruction 1000.12 (2025), although the uniform instruction offers three alternatives for element number two: "The defendant did so with the specific intent to commit [sexual abuse] [sexual exploitation] [illegal act] upon (victim)." (Alterations in original.) The district court gave the third alternative.

**III. Reasons Why the Objection Should Have Been Sustained.**

This objection should have been sustained. We don't let jurors decide what is legal and what is illegal; we tell them. "Jury instructions are designed to explain the applicable law to the jurors so the law may be applied to the facts proven at trial." *State v. Cunningham*, 463 N.W.2d 887, 889 (Iowa Ct. App. 1990).

Our precedent aligns with this approach. For example, the stand-your-ground defense provides that "[a] person who is not engaged in illegal activity has no duty to retreat from any place where the person is lawfully present before using force as specified in this chapter." Iowa Code § 704.1(3). But when the jury is instructed on the stand-your-ground defense, we have indicated that they should be *told* what the state alleges the illegal activity to be. In *State v. Ellison*, 985 N.W.2d 473, 480 (Iowa 2023), we noted that the stand-your-ground instruction used the statutory term "illegal activity," but the next instruction specified an illegal activity:

> With regard to element no. 3 of the previous two instructions, it is illegal for a person to go armed with any dangerous weapon with the intent to use that weapon against another person without justification. The defendant is not charged with this crime.

We then added that

> the instructions could have been more clearly stated by not including the term "illegal activity" at all. The court instead might simply have offered the elements of the State's proposed illegal activity, tying that finding directly to the viability of the stand-your-ground exception, without leaving the jury to supply its own definition of "illegal activity" and to consider whether the conduct met this definition.

*Id.* at 481. Later, in *State v. Johnson*, 7 N.W.3d 504, 509 (Iowa 2024), another stand-your-ground case, we observed that "the district court . . . astutely saw for itself the benefit of specifying the underlying 'illegal activity' in the stand-your-ground instruction."

The crimes of burglary and attempted burglary require "the intent to commit a felony, assault or theft." Iowa Code §§ 713.1–.2. We have held as follows:

> The State is . . . required to specify the felony that the defendant intended to commit after the breaking and entering. To avoid confusion or speculation on the part of the jury, the district court must also instruct on the elements constituting the felony. Failure to do both is reversible error.

*State v. Mesch*, 574 N.W.2d 10, 14 (Iowa 1997). We added,

> Requiring the State to specify the felony is not onerous. While the State may not know what the defendant *actually* intended to do inside the dwelling, the State knows very well what *evidence* of intent it has. If the State has evidence of intent to commit certain felonies, and not others, it should request instructions only on those the evidence supports.

*Id.*; *see also State v. Austin*, 80 N.W. 303, 304 (Iowa 1899) ("Following the charge of the court, the jury found the defendant 'guilty of the crime of assault with intent to commit a felony'; but what felony he intended to commit is not designated, and can only be inferred. We are of the opinion that the jury should have been required to designate in its verdict the specific offense of which it found the defendant guilty." (citations omitted)), *overruled on other grounds by*, *State v. Wagoner*, 74 N.W.2d 246 (Iowa 1956).

The prosecutor exploited this gap in the marshaling instruction, positing that the jury really just needed to decide whether the defendant was "a good samaritan" or "up to no good." Here are some excerpts from the prosecutor's relatively short closing argument:

> Was Mr. Brown a good samaritan, and . . . not thinking of anything bad? He was just trying to help this poor girl? Or was he a stranger danger, and he was up to no good, and he meant to do something illegal?
>
> And I would note that in . . . Instruction No. 19, you don't all have to agree what his specific intent was, as far as -- You have to

agree that he intended an illegal act. That was his intent. You don't have to all agree what that -- what the illegal act was. Maybe one of you thinks he was going to continue to harass her, and that's an illegal act that he was intending to commit in that car. Another person might think, well, he was going to have physical contact with her that she didn't welcome, it was an assault. Another one of you might think he intended to sexually abuse her. Another person might think he did something illegal, maybe take her some place without her parent's permission in a form of kidnapping or false imprisonment. You all don't need to agree on that theory, but you all need to agree that he had the intent to do an illegal act. Okay?

And again, we don't have a brain scan, but you have your common sense and experience. So when you -- we look at common sense and experience, was he a good samaritan or was he a stranger danger? If he was a good samaritan, he would have asked her if she needed help. If he was a good samaritan, he would have contacted -- called the police. If he was a good samaritan, he would have asked where her parents were. If he was a good samaritan, he would have notified the store employee. If he was a good samaritan, he would have simply offered her help of some kind.

But he was not a good samaritan. He was in -- he was not thinking about [Diya]. He was thinking about himself. That's why he was trying to get her alone in a car. A good samaritan does not try to get a 13-year-old alone in the car with them.

The prosecutor renewed this theme in his rebuttal closing argument:

Ladies and gentlemen of the jury, Mr. Dale talked a lot about specifically what crime that occurred. If we again look at the marshalling instructions, which is the checklist, number 2 is: "The defendant did so with the specific intent to commit an illegal act upon the alleged victim." It doesn't say specific intent to commit a sexual abuse or an assault or molestation or robbery. It doesn't say that. It just says illegal act. That's left to your discretion.

. . . .

Regardless of if it's 1970 or if it's 19 -- 2024, he was not acting as a good samaritan. His behavior was not that of a good samaritan. His heart was not pure. He was acting selfishly for himself. And as a result, you can conclude that he intended to do something illegal once she got in that car.

Leaving "illegal act" up to the jury's "discretion" was incorrect. Jurors can't be expected to know the contours of what is and isn't "illegal," and the

prosecutor's argument invited them not to bother making the effort. Also, not all criminal conduct would have necessarily qualified under Iowa Code section 710.10(4), only illegal conduct committed "upon" another. *See State v. Holtz*, No. 15–1058, 2016 WL 4036112, at *1, *3–4 (Iowa Ct. App. July 27, 2016) (reversing an enticement conviction where the defendant enticed the minor to go inside her house and use marijuana with her; possession of marijuana was "not an unlawful act committed 'upon' another").

Giving the State this unwarranted leeway put defense counsel in a difficult position of not knowing *what* he had to argue against. Here was the focus of his closing argument:

> So let me ask you, let's -- it begs the question, the obvious question here: What is the illegal act the State is alleging Mr. Brown had the intent for? I'll ask that again. What exactly is the illegal act, the crime that Mr. Brown is supposed to have the specific intent for? Do you know? I don't. I sat through this trial just the same as you, and I have not heard a single bit of testimony that points to what Mr. Brown's intent is supposed to have been. What is the illegal act?
>
> . . . .
>
> . . . Demand from the State what is the theory, what is the specific intent? Because the burden is on them to show that to you, and they haven't. They haven't done a least bit of effort. It's not for you to have to speculate and to guess. They're saying that he has specific intent to commit a crime. What crime? What's the crime? What's the crime that he wanted to commit? Because it's not enough to speculate. It's not enough to guess. They have to show that to you.

Legally, I think defense counsel had a valid point. But his argument was undermined by the district court's marshaling instruction.

The State suggests that it would be impractical to have to specify one or more "illegal acts" in the jury instructions. I disagree. This is no more and no less than we already require in burglary and stand-your-ground cases. *See State v. Washpun*, No. 03–0963, 2004 WL 1898470, at *1 (Iowa Ct. App. Aug. 26,

2004) (noting that in an enticement case, on the defendant's motion, the State specified "assault and/or sexual abuse" as the illegal acts that the defendant allegedly intended to commit and these were reflected in the jury instructions). Even when the evidence might support more than one "illegal act" as the defendant's intended purpose, the jury could be instructed that they need not agree on the same act and then asked to enter a general verdict. *See* Iowa Code § 814.28.

**IV. Failure to Reurge the Objection on Appeal.**

Having said all this, I agree with the majority that these issues are not part of the present appeal. In his appellate brief, the defendant instead makes two *other* arguments. First, the defendant contends that "illegal act" should have been defined as "unlawful sexual act upon or with the alleged victim." I don't agree. Iowa Code section 710.10(4) clearly covers some intended acts that are not sexual in nature because it states that "[a] person convicted under this subsection shall not be subject to the registration requirements under chapter 692A unless the finder of fact determines that the illegal act was sexually motivated." Second, the defendant contends that the evidence was insufficient to sustain his conviction. Here too, I disagree because a reasonable juror could indeed conclude that the defendant intended to commit *an* illegal act upon Diya. My objection is that the illegal act should have been defined—or "sifted."

With the foregoing observations, again, I join the court's opinion.

McDermott, J., joins this concurrence.